SNYDER ELEVATORS, INC., Appellant (Defendant Below),

v.

Timothy BAKER and Jamie Baker, Appellees (Plaintiffs Below),

Easterday Brothers Co., Inc., Appellee (Defendant Below).

No. 22A01–8804–CV–00120.

Court of Appeals of Indiana, First District.

Oct. 25, 1988.

Ernest W. Smith, Smith Bartlett & Heeke, Jeffersonville, for appellant.

William C. Moyer, Steven A. Gustafson, Lorch & Naville, New Albany, for appellees.

ROBERTSON, Judge.

Appellant-defendant Snyder Elevators, Inc. (Snyder) appeals the trial court's granting of the appellee-plaintiff's motion to correct error by which the trial court vacated its entry of summary judgment in favor of Snyder.

We reverse.

This personal injury action against Snyder was commenced when Timothy Baker and Jamie Baker (Bakers) were injured when they drove their motorcycle into the front of a car driven by Tonya Buck.

Snyder operates a grain elevator in New Albany, Indiana. Snyder is located several blocks from the intersection at which the accident occurred. The elevator received grain by truck and shipped it out by rail. The independently-owned trucks delivering grain were customers of Snyder. In 1986, the Commodity Credit Corporation designated Snyder a recipient of forfeited grain. As a result, the grain elevator saw increased activity during the harvest months of 1986. During normal harvest, 50–75 trucks daily would unload grain at the elevator. During the 1986 harvest season, 85–95 trucks arrived daily. Snyder's parking lot accommodated only 25 trucks. Consequently, trucks normally lined up along the curbs of neighboring streets waiting to unload grain.

Main Street intersects 14th Street near the grain elevator. In the past, trucks had never gotten backed up farther than 14th Street waiting to unload grain. During the 1986 harvest season, trucks began lining up along Main Street where it intersected 14th. On September 5, 1986, an Easterday Company truck waiting in line to be unloaded at Snyder's was parked at the curb on Main Street near the intersection. Tonya Buck had driven her car north on 14th Street until she got to Main. After stopping at Main, she inched forward because her view of Main Street to the west, or left, was obstructed by the Easterday truck. The Baker motorcycle was traveling east on Main Street when it collided with Buck's car. At the time the motorcycle hit the front bumper of Buck's car, her car was stopped.

Before the accident, the city and neighbors had complained to Snyder about the trucks queueing up on Main Street. The complaints were concerning trucks blocking driveways and doorways along Main. In response, Snyder arranged for the trucks to park in a parking lot of a nearby McDonald's restaurant. In order to implement this, an employee of Snyder delivered to drivers a map detailing the route the drivers were to take to the elevator. However, this arrangement lasted only a week because arriving trucks "jumped" the line ahead of the trucks waiting in the McDonald's lot. The trucks resumed parking on Main Street.

The Bakers brought suit against Easterday Brothers, owner of the truck, and Snyder. In its count against Snyder, Bakers allege Snyder was negligent in failing to: 1) provide adequate parking for its customers; 2) provide an orderly and efficient means of loading and unloading customers; 3) inform its customers that their parking was creating hazards to the public; and 4) failed to implement steps to eliminate those hazards.

Snyder filed a motion for summary judgment, contending that no genuine issue of material fact existed, and that as a matter of law, Snyder owed no duty to Bakers, nor had Snyder assumed any duty toward Bak-

ers. The trial court granted Snyder's motion, but vacated its judgment upon consideration of Bakers' motion to correct error. The two issues presented by this appeal are: 1) whether Snyder owed any duty of care toward Bakers, and 2) whether Snyder gratuitously assumed any duty of care toward Bakers.

■ When reviewing a ruling on a motion for summary judgment, we must determine whether there is any genuine issue of material fact, and whether the law was correctly applied. The moving party has the burden of establishing that no material facts are in genuine issue. All doubts and inferences are resolved in favor of the nonmoving party. *Perry v. Northern Indiana Public Service* (1982), Ind.App., 433 N.E.2d 44. Whether a duty exists is a question of law for the court. *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216. Absent a duty, there can be no breach of a duty, hence, no negligence or liability based upon a breach of duty. *Id.*

■ No Indiana case involves facts giving rise to the precise question of this case. However, duty was not intended to be defined or delineated by the specific factual circumstances of a case:

" ... the problems of 'duty' are sufficiently complex without subdividing it ... to cover an endless series of details of conduct. It is better to reserve duty for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff."

W. Prosser and W. Keeton, The Law of Torts § 53 at 356 (1984).

The operators of a flea market adjacent to a highway owed no duty to its patrons to protect them from being struck by automobiles as the patrons were walking along a highway to the flea market. *State v. Flanigan, supra.* The *Flanigan* court declined to impose liability on the operators of the flea market for the acts of a third party

over whom the operators had no control, and which occurred not on their property but on a public highway over which they had no control. In *Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534 the court found a business owner owed no duty to a member of the general public to control the acts of a third person. In that case, the plaintiffs were injured on a highway off the premises of the defendant motor speedway at which the intoxicated driver had caused a minor accident. The court recognized that the owner of land has a duty to protect business invitees from the acts of third persons on the premises when the danger to the invitee is foreseeable. Under that rule, only the speedway patrons would have been entitled to protection, and only from hazards from persons and conditions on the premises. *Id.*, 537–538. The court also noted that the right to control another person's actions is essential to the imposition of a duty to control his actions.

In the instant case, the plaintiff is a member of the public-at-large, not having with the defendant any of the common relationships traditionally imposing a duty of reasonable care: landowners to invitees, common carriers to passengers, and innkeepers to guests. *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764. The business owner in *Flanigan* did not owe a duty even to his patron where the injury occurred off the business premises and was a result of actions of a stranger to defendant over whom defendant had no control. More apposite to the case at bar is *Sports,* where the speedway was under no obligation for the benefit of the plaintiffs who were members of the public-at-large.

Even cases in which the courts favor expanding liability beyond the boundaries of the business premises do not benefit Bakers. *Ember, supra,* considered the question whether a business owner's liability is limited only to the area owned or leased, and it concluded that such a limitation may not exist. However, in *Ember,* the duty grew out of the landowner's relationship with the plaintiff, his business invi-

tee. *Ember* at 772.[1] Indeed, the majority's opinion assumes Ember was a business invitee, whose status as such was not diminished merely because he was waiting outside the defendant Pub's legal boundaries. *Ember* at 772. (The dissent disputes that Ember was a business invitee.) The *Ember* majority did not hold that the Pub owed a duty to a member of the public from dangers from third persons off the Pub's premises, although the Pub may have gratuitously assumed a duty toward members of the general public in the vicinity of the Pub. *Id.* at 770.

■ Alternatively, the *Ember* majority proposed that a business owner may owe a duty when the activities conducted on its business premises affect the risk of injury off the premises. In that case, the landowner may be under a duty to correct the condition or guard against foreseeable injuries. The majority implies that it was the Pub's serving of alcohol and the concomitant gathering of loud and boisterous crowds which affected the risk of injury off the premises. However, we have not found any cases which apply that rule when the plaintiff is not a patron. *See Kopfinger v. Grand Central Public Market* (1964) 60 Cal.2d 852, 37 Cal.Rptr. 65, 389 P.2d 529; *Horner v. Penn Fruit Co.* (1951), 169 Pa.Super. 473, 82 A.2d 313.

We believe that if members of the general public are to benefit from such a rule, it should be limited to cases in which the defendant has maintained a hazardous condition or conducted some activity on the premises, beyond the mere fact of operating a business, which causes the off-premises injury. *See Pitcairn v. Whiteside* (1941), 109 Ind.App. 693, 34 N.E.2d 943 (occupier of land who had started fire creating dense smoke which obscured view on adjacent highway, owed duty to refrain from endangering traveling public). There was nothing in the way the elevator conducted its business which resulted in the long queues outside the business premises;

1. The foreign cases cited in *Ember* in support of extending premises liability both involved plaintiffs who were business invitees of defendant.

*Ollar v. Spakes* (1980), 269 Ark. 488, 601 S.W.2d 868; *Chapman v. Parking, Inc.* (1959), Tex.Civ. App., 329 S.W.2d 439.

there were simply more customers than usual. In fact, the record established that the elevator was weighing and unloading truckloads of grain at a much greater rate than during normal harvest periods.

We find support for this limitation in *A. Teichert & Son, Inc. v. Superior Court* (1986), 179 Cal.App.3d. 657, 225 Cal.Rptr. 10. There, a bicyclist was struck by a dump truck turning into Teichert's plant. Teichert claimed it owed the cyclist no duty to control traffic off its premises. Recognizing that activities conducted on land which give rise to a hazardous condition off the premises may result in a duty, the court nevertheless held that Teichert did not owe a duty to the bicyclist because there was no evidence of a hazardous physical condition created by Teichert's business enterprise.

An Ohio court has encountered the precise issue we must decide here: whether we should impose an affirmative duty on a property owner to protect third parties from the negligent acts of business invitees which occur outside the owner's property and are beyond the owner's control. *Gelbman v. Second National Bank of Warren* (1984), 90 Ohio St.3d 77, 458 N.E.2d 1262. The trial and appellate courts answered in the negative. In *Gelbman,* a motorist passing a driveway from which a customer of Burger King was exiting collided with the customer. Burger King's property fronted the street, and the intersection at which the accident occurred was dangerous because the Burger King driveway was not included in the signal control. The operator of the Burger King had been told the intersection was dangerous but had refused to pay for improvements to the signal which would eliminate the danger. The court held that the Burger King owners and operators did not owe any duty to the non-patron driver—either by statute or common-law. With respect to any common-law liability, the court would not extend the duty to control invitees to protect third parties where they have left the owner's premises and are outside the owner's control. The court quoted Judge Cooke in *Pulka v. Edelman*

(1976), 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019:

"although it is reasonable to require one person to be responsible for the negligent conduct of another in some instances, it is unreasonable to impose that duty where the realities of every day experience show us that, regardless of the measures taken, there is little expectation that the one made responsible could prevent the negligent conduct."

■ We conclude that the law does not impose a duty on a business to guard against injury to the public from the negligent acts of a customer over which the business has no control and which injury occurs off the business's premises.

■ Bakers' second contention is that, even if the law would not impose a duty on Snyder, he gratuitously assumed a duty toward Bakers. Bakers correctly note that whether a party has assumed a duty and the extent of such a duty, if any, are questions for the trier of fact. *Plan–Tec. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212; *Perry v. Northern Indiana Public Service* (1982), Ind.App., 433 N.E.2d 44. The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Plan–Tec., supra.*

■ On this issue, there was evidence in the record showing that Snyder received complaints from the city and from an individual concerned about the trucks blocking driveways and doorways along Main Street, with the effect of deterring patrons from the businesses facing Main Street. Upon receiving these complaints, Snyder arranged for trucks to park in the McDonald's lot, and the trucks were instructed to go there. This scheme had only limited success because newly-arriving trucks would "jump" the line, and the McDonald's lot was not adequate to accommodate all waiting trucks.

In any case, Snyder's actions were in response to specific complaints not involving perils to the drivers along Main, but the detrimental effect which the trucks were

having on business concerns along Main. There was insufficient evidence to create a factual issue for a jury on the question of assumption of a duty toward Bakers. No reasonable trier of fact could conclude from the record that Snyder's actions were undertaken for the benefit of motorists using Main Street. *Cf. Plan–Tec., supra* (evidence sufficient for jury on question of whether Plan–Tec assumed a duty for subcontractor's safety where there was an on-site safety director and weekly safety meetings).

Denial of Snyder's motion for summary judgment was in error, because there is no genuine issue of material fact and the law is in favor of Snyder. Therefore, we must reverse.

Reversed with instructions to grant summary judgment in favor of Snyder.

NEAL and STATON, JJ., concur.