Cassandra PATEL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 84S00–8612–CR–1013.

Supreme Court of Indiana.

Jan. 30, 1989.

William C. McClain, Vigo County Public Defender, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Wendy L. Stone, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On April 21, 1986, a jury, in Vigo Superior Court Division I, found Defendant–Appellant Cassandra Patel guilty of murder, and subsequently the trial court sentenced her to a term of forty (40) years.

Specifications of error presented for our consideration in this direct appeal have been consolidated into five, as follows:

1. refusing Patel's tendered instructions;
2. admitting certain exhibits into evidence;
3. admitting evidence in violation of discovery rules;
4. admitting Patel's confession; and
5. denying Patel's motion for judgment on the evidence.

The facts indicate that on the evening of November 18, 1985, the victim, Linda Ketner, was visiting her brother, Edward Ketner, at his home at 1905 Elm Street, Terre Haute, Indiana. At about 9:00 p.m., she was speaking with a friend on the phone while sitting at the kitchen table, which was located directly inside an open window in the front of the house. Edward Ketner also was sitting at the table when they heard a loud knock at the door. Linda got up from her chair and was preparing to answer the door when Edward heard a gun shot come through the front door. He told Linda to get down but as she stopped near the refrigerator and turned toward the kitchen window, she was shot in the chest. Edward noticed she grabbed at her chest and began screaming. He laid her down in the living room while he called for help but she died at the scene.

Neighbors heard the shots coming from outside the Ketner home and saw two women, one a 5′9″ light haired woman with glasses, running from the scene toward a nearby school. Prior to their departure, a witness, Keith Ellington, saw Cassandra Patel and her sister proceed up to the front door of Ketner's residence. Edward Ketner was Cassandra Patel's ex-husband.

The two women had previously told Ellington they were going to settle some dispute concerning Patel's child and asked him to join them by waiting for them in the alley. Patel banged on the door and yelled something, at which time she drew her gun, stepped back and fired shots into the house. At this point all of them ran from the scene.

About 11:00 p.m. that evening, Terre Haute police received a call from a woman who identified herself as Patel and confessed to killing Linda Ketner; she quickly added her mother had nothing to do with the shooting. She told police she was at a truck stop and would wait there for them. Police subsequently found her at the designated truck stop and arrested her.

I

Patel claims the trial court erred in refusing to give her tendered instructions No's. 1, 2, 3, 6, 7, 8, and 9, to the jury. It is basic that in considering whether any error results from refusal of a tendered instruction, the reviewing court must determine: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support the giving of the instruction; and 3) whether the substance of the instruction is covered by other instructions which were given. There is no error in refusing an instruction where its subject matter was substantially covered by other instructions which the court gave. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1161, *cert. den.* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851; *Kalady v. State* (1984), 462 N.E.2d 1299, 1311.

Patel's tendered instruction No. 1 addressed the State's burden of establishing her guilt as charged beyond a reasonable doubt and further elaborated that the State must prove each material element of the crime beyond a reasonable doubt. This subject was fully covered in the court's final instructions 1 and 3. Patel's tendered instruction No. 2 concerned the jury's right to determine the law and facts and reiterates the reasonable doubt language. The court's final instruction No. 8, which was

given, covered this subject well; it clearly referred to the constitutional provision which states the jurors are judges of both the law and the facts, and explained the meaning of those provisions. Also, Patel's tendered instruction No. 3 defined "knowingly" as an element of a crime requiring criminal intent on the part of the defendant. The court's final instructions No's. 5, 11, and 12 clearly covered this subject; they explained the State must prove all material elements of the offense, gave the material elements of the offense of murder, and specifically defined "knowingly" in the context of knowingly engaging in conduct. Patel's tendered instruction No. 6 is another reference to the prosecution's burden of proving every element of the offense beyond a reasonable doubt. As indicated above, the court's final instruction No. 11 fully covered this area. Final Instruction No. 22, which communicated to the jury information concerning the exclusion of every reasonable hypothesis of innocence, covered Patel's instruction No. 7. The court's final instructions 4 and 9, which concerned the weighing of evidence and judging the credibility of witnesses, fully articulated the subject of Patel's tendered instruction No. 8. Patel concedes final instruction No. 23 covered her tendered instruction No. 9, but claims her instruction was more simple. We find the court's instruction 23 is more complete than Patel's tendered No. 9 and includes definitions of direct evidence, circumstantial evidence, inferences to be drawn from facts in evidence, and a test for determination based on circumstantial evidence.

Clearly the court's instructions adequately covered each of Patel's tendered instructions, and we find no error where the trial court refused her instructions.

## II

Patel claims the trial court erred in admitting into evidence State's Exhibit 42, a photograph of her taken at the time she was booked for the instant charge at the Vigo County Jail. Patel cites *Richey v. State* (1981), Ind., 426 N.E.2d 389, for the proposition that "mug shots" are generally inadmissible. She is, of course, correct

that "mug shots" are prejudicial to a defendant in that they connote prior criminal activity. *Id.* at 394. See also *Long v. State* (1988), Ind., 529 N.E.2d 339, 340. This was not true of State's Exhibit 42, however. The purpose of admitting Exhibit 42 was to show differences in Patel's appearance at trial and at the time of her arrest. Witness Marci Oldham testified she saw Patel running from the Ketner house that night, but she had shorter hair and was wearing glasses. Exhibit 42 was offered to corroborate that testimony. The fact that a portion of the photo revealed the words "Vigo County Jail" along the right side did not create undue prejudice to Patel since testimony indicated the photograph was indeed taken at the Vigo County Jail at the time she was being charged with the crime. There was therefore no error in its admission into evidence.

Patel further argues State's Exhibits 1, 2, 3, 4, 5, and 13, which were exterior photos of the crime scene, were improperly admitted. The admission or exclusion of photographic evidence rests largely with the discretion of the trial court and the determination that court makes will not be disturbed on appeal unless it is clearly erroneous. The law approves of the use of photographs to prove the existence and nature of relevant physical objects and scenes so long as they are true and accurate. *Boyd v. State* (1986), Ind., 494 N.E. 2d 284, 295, *cert. den.* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860; *Brumfield v. State* (1982), Ind., 442 N.E.2d 973, 975. The purpose of such photographs is to aid the jury in visualizing the scene as described in testimony.

Witness Edward Ketner identified these exhibits and testified they depicted the scene as it was immediately before, after, or at the time of the shooting. He pointed out the discrepancies in the photos from the actual condition of the scene that night. He stated the difference in the photo designated as State's Exhibit 2, as compared to the scene at the time of the crime, was that a police officer was standing in the doorway in the photo and the house was artifi-

cially illuminated. Ketner also testified State's Exhibit 3 represented the appearance of the exterior of the house at the time of the shooting and distinguished this shot from Exhibit 2 which represented the scene after the shooting. These discrepancies, with the attendant explanation, were not so material as to be inadmissible on the grounds they would mislead the jury. *Gill v. State* (1977), 267 Ind. 160, 166, 368 N.E. 2d 1159, 1162.

Ketner also testified that Exhibit 13, a photo of the kitchen window, substantially depicted the way that window appeared at the time of the shooting; that is, the curtains were open, the window was up, and the screen was in place. The photographs were offered in conjunction with Ketner's testimony and showed the approximate direction from which the second shot came into the home. Although the bullet holes in the screen were not apparent from the photos, they were not being offered as proof as to the location of the bullet holes, but rather to assist the jury in visualizing the kitchen area and the angle or direction from which the bullet came through the screen. Therefore, the fact the bullet holes could not be clearly seen in the photos does not mean they lacked probative value. Patel's argument goes to the weight to be given these exhibits rather than to their admissibility. We do not see that the trial court abused its discretion in admitting State's Exhibits 1, 2, 3, 4, 5, and 13.

Patel further objects to the admission of Exhibits 19 and 20, claiming they were irrelevant and immaterial. Even if offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility; the trial court is given wide latitude in this area. *Youngblood v. State* (1987), Ind., 515 N.E.2d 522, 526. Exhibit No. 19 was the screen from the kitchen window and Exhibit 20 was a drape which hung on the kitchen window on the night of the shooting. The two exhibits demonstrated there were bullet holes in the screen and no bullet holes in the drape. From this the jury could infer the drapes were open at the time of the shooting, and one standing on the outside could see directly into the kitchen and fire the shots which killed the victim.

The only objection Patel made to Exhibit 19 was that there was no clear chain of custody since the time the exhibit was removed from the house. Whether a proper chain of custody has been established is a question of weight rather than admissibility. *U.S. v. Wheeler* (7th Cir. 1986), 800 F.2d 100, 106. Ketner clearly identified the window screen as the one from his kitchen window, and described its size and shape. He had no knowledge of who took it from the house and where it was stored from that time until the time of trial. Since he was able to identify the object, chain of custody was not as relevant as might be expected with fungible items which do not have their own peculiar identity. *See Daniel v. State* (1988), Ind., 524 N.E.2d 1275, 1277–78. The trial court has discretion to admit exhibits into evidence and need not require absolute and positive identification. Admission is proper even where there is only a slight tendency to connect the defendant with the offense. *Simmons v. State* (1987), Ind., 504 N.E.2d 575, 581. The screen was identified as coming from the kitchen window of the Ketner home where the shooting took place. This establishes probative value sufficient for admission into evidence.

The only objection Patel makes to Exhibit 20 is that the drape which hung on the kitchen window is irrelevant. For reasons given above regarding Exhibit 19, Exhibit 20 was admissible.

Finally, Patel claims the trial court erred in admitting State's Exhibit 22, a photograph of the victim, into evidence. This particular photograph depicted the victim just after she was shot in the chest and was placed on the living room floor by her brother before he called for assistance. In the photo one can also see a portion of the kitchen and the kitchen window. The fact that a photograph is gruesome and might arouse the jury is not sufficient ground in itself to justify its exclusion from the evidence if it is otherwise material and relevant. *Boyd*, 494 N.E.2d at 295–96. The

State offered Exhibit 22 into evidence during the testimony of Edward Ketner, the victim's brother, after he described what happened when his sister was shot. Exhibit 21, a photo of the body from an angle in which one cannot see the fatal injury, was offered first. Exhibit 22 could reasonably have aided the jury in identifying the crime scene and the position of the body as testified to by Edward Ketner. The trial court did not abuse its discretion in permitting the admission of both of these photographs.

### III

Patel contends State's Exhibit 30, a floor plan of the Ketner residence prepared by witness Drake Johnson of the Terre Haute police department, was improperly admitted. She also claims the testimony of Detective Perrelle of the Terre Haute Police Department was improperly admitted because he was not specifically listed on the witness list.

We first note the trial court must be given considerable discretion in discovery matters since it has the duty to promote the presentation of the truth and to guide and control the proceedings. Absent clear error and resulting prejudice, the trial court's determination as to violations and sanctions should not be overturned. *Norris v. State* (1987), Ind., 516 N.E.2d 1068, 1070. When the State has violated a discovery order a continuance is the normal remedy. *Boyd v. State* (1985), Ind., 485 N.E.2d 126, 127–28. The failure to request a continuance where it may be the appropriate remedy constitutes a waiver of any error pertaining to non-compliance with a discovery order. *Id.* at 128. Even assuming the defendant had preserved the issue of non-compliance with the discovery order, exclusion of the evidence is appropriate only when the prosecution has blatantly and deliberately refused to comply with the discovery order. *Id.* Patel does not claim bad faith or wrongful intent on the part of the State concerning either Exhibit 30 or the testimony of this police officer, but still insists exclusion is proper.

State's Exhibit 30 was a drawing by witness Drake Johnson which was corroborative of his testimony. The existence of the diagram did not come to light until Johnson was on the stand. He then indicated he had made the drawing very shortly after the original investigation, "probably the next morning after November 18, either the 19th of November or the 20th." The State indicated the exhibit had just been provided to them that day and they made an attempt to advise the defense of its existence. The defense objected to it on the grounds trial counsel had not seen it before that day and had no knowledge of it prior to that date, and he "couldn't agree to its admission without further investigation as to its accuracy or veracity." The State responded the exhibit was just provided to them that day and that inquiry could be made of the witness on the stand. The court's response was:

> May I see it? Well, it says that it is not drawn to scale, but as to establishing its accuracy or lack thereof, the witness is on the stand for cross-examination. As to your not being provided this beforehand, this is really very much in the way of illustration of testimony that you had access to from the police report, so it is really just a diagram of what you were provided by way of testimony and is in the way of trial preparation, so that objection will be overruled.

As the trial court indicated, the drawing was not to scale and was nothing more than a diagram illustrating the witness' testimony. It showed his observation of the scene and the path and trajectory of the bullets. Since the witness was on the stand testifying to his observation of these facts, there was no indication of bad faith or wrongful intent on the State's part. Also, the defendant did not request a continuance to further examine the exhibit. Therefore no reversible error is presented on the court's ruling.

With regard to Officer Perrelle's testimony, we find that by request, the State provided the defense with a written list of specific witnesses it intended to call. Also included in the discovery the State furnished was the provision: "Anyone

mentioned in the police reports." Officer Perrelle's name was included in the police reports. Patel does not point out the content of Perrelle's testimony or any resulting prejudice. She simply claims it should have been excluded. There is no claim or indication that the State's conduct showed bad faith or flagrant refusal to comply with discovery. Patel fails to show abuse of discretion which resulted in prejudice to her which merits reversal.

### IV

■ It is Patel's contention the trial court erred in admitting her confession into evidence, because the voluntariness of the confession is questionable.

Admissibility of a confession ultimately depends upon questions of fact which the trial court resolves. As such, the standard for appellate review of admissibility is the same as any other fact finding issue. *Coleman v. State* (1986), Ind., 490 N.E.2d 711, 712–13. The facts show that on November 18, 1985, at 11:30 p.m., Terre Haute Police Officer Steve Michaels received a phone call on the emergency number. Upon answering, he heard a female state she killed the woman on Elm Street earlier that night. She said her mother had nothing to do with the shooting. (Apparently her mother tried to claim responsibility for the crime.) She then identified herself as Cassandra Patel and gave the officer her location at the C & D Truck Stop on south 41. Detectives Joseph Newport and Nick Perrelle drove to the truck stop and found Patel there. They searched her for weapons, advised her of her *Miranda* rights, and placed her under arrest. While transporting her back to Terre Haute, Newport again advised her of her constitutional rights. She stated she understood them and would tell them anything they wanted to know. She then admitted to the killing and told the police where she put the gun after the shooting. Patel then asked for an attorney and at that point Newport ceased all questioning. There is no showing the statements she made to Newport were induced by violence, threats, promises, or any other undue influences, and Patel does not make any charges in that regard. She

maintains the detective should have inquired further regarding the muscle relaxants she had taken. She points to no independent evidence she was under the influence of drugs or other intoxicants at the time she made her statement. Detective Newport stated she did not appear intoxicated and was able to answer questions and give directions without any problems. The court properly permitted her confession into evidence.

### V

■ Finally, Patel claims the court erred in denying her motion for judgment on the evidence based on the "facts at trial and objections stated herein." She incorporates the arguments she presented on all the issues we have already resolved. From a review of the evidence it is clear the State presented ample evidence to support the charges beyond a reasonable doubt; no new evidence is presented in this specification of error which indicates the trial court erred in overruling her motion.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.