Stanley **VALINET** and NRC Corporation, Appellants (Defendants below),

v.

Ann L. **ESKEW** and Phillip N. Eskew, Appellees (Plaintiffs below).

No. 06A01–8908–CV–330.

Court of Appeals of Indiana, First District.

Aug. 6, 1990.

Robert B. Clemens, Ronald R. Hull, Ice Miller Donadio & Ryan, Indianapolis, for apellants.

Robert A. Garelick, Steven M. Crell, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, Thomas A. Whitsitt, Giddings Whitsitt Baker & McClure, Lebanon, for appellees.

ROBERTSON, Judge.

Stanley Valinet (Valinet) and the NRC Corporation (NRC) appeal the trial court's judgment finding them liable to Ann Eskew for the damages she incurred when a large tree fell from NRC's property onto Eskew's automobile as she was traveling on an adjacent roadway.

We affirm.

On December 15, 1987, Eskew was traveling south on Spring Mill Road beyond the 106th Street intersection in Clay Township, Hamilton County, when a large tree fell onto her automobile, crushing the vehicle and causing Eskew serious injuries. The tree blew onto the roadway from property belonging to Valinet and NRC during a storm having peak winds of up to 65 m.p.h. The tree was originally situated in a densely wooded portion of the appellant's property and was located approximately twenty-eight (28) feet from the edge of the roadway. Evidence was presented at trial tending to show that the tree had been dead for three (3) to four (4) years prior to the date of the accident, and had probably been showing signs of decay for approximately ten (10) years. Valinet, who only intermittently lives on the Clay Township property testified, however, that he was unaware of the tree's condition despite the fact that he would occasionally make driving inspection tours of his property and had driven past this particular tree "a lot." Record at 677.

On April 7, 1988, Eskew and her husband filed a complaint against NRC alleging negligence. The Eskews were later al-

lowed to amend their complaint to include Valinet as a co-defendant to the claim. NRC filed a motion for summary judgment on October 13, 1988, which was later denied. The trial court set the matter for trial on July 24, 1989. NRC and Valinet filed a motion to bifurcate the trial, and consider the issue of liability before proceeding to litigate damages should such an action prove necessary. However, the motion to bifurcate was denied. On July 12, 1989, the Eskews requested a continuance of the trial date because Ann Eskew's injuries were not yet quiescent. NRC and Valinet objected to the continuance based on the fact that Valinet was seventy-two (72) years old, and their expert witness was seventy-three (73) years old and delay could threaten the defendant's ability to defend the case. The trial court denied the motion for a continuance, but allowed the Eskews to consent to a bifurcated trial as earlier requested by NRC and Valinet. The Eskews did consent and a jury trial on the issue of liability was held on July 24, 1989.

The jury returned its verdict on July 26, 1989, finding in favor of the Eskews on their negligence claim. Judgment was entered on this verdict on August 23, 1989. The defendants then requested that the trial court certify the issue of liability along with certain attendant evidentiary and procedural issues for appellate review in accordance with Ind.Appellate Rule 4(B)(6)(b). The trial court entered its order certifying the issues on August 14, 1989, and this court accepted jurisdiction of the matter on September 29, 1989.

■ Valinet and NRC argue that the trial court erred in denying their motion for summary judgment because, as a matter of law, Valinet and NRC as landowners, did not owe a duty to persons traveling on adjacent roadways. We first note that the interlocutory order certified for review was not the trial court's denial of Valinet and NRC's motion for summary judgment, but rather it was the trial court's judgment entered upon the jury's verdict in favor of the Eskews on the issue of liability which was certified. This distinction is important because it affects the standard of review employed by this court on appeal. Unlike the review of ruling on a motion for summary judgment where this court stands in the shoes of the trial court and views the evidence in a light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law, *see Franklin Bank and Trust Co. v. Mithoefer* (1990), Ind.App., 552 N.E.2d 39, 41, when reviewing the judgment of a trial court, all reasonable presumptions are indulged in favor of that judgment. *Indiana–Kentucky Electric Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, 143. In the present case, Valinet and NRC are essentially arguing that the trial court's judgment entered in favor of the Eskews was contrary to law. Therefore, our proper standard of review is as follows:

"When a judgment is attacked as being contrary to law, this court neither considers the credibility of the witnesses nor reweighs the evidence, instead, we look solely to the evidence most favorable to the judgment, together with all reasonable inferences therefrom, and it is only when this evidence is without conflict and leads to but one conclusion and the trial court reaches a contrary conclusion, will we reverse a decision for being contrary to law."

*Id.* Given this standard of review, we now turn to the question of whether or not the trial court erred in determining that Valinet and NRC as owners of the Clay Township property owed a duty to Ann Eskew, a traveler on the adjacent roadway.

■ As correctly noted by Valinet and NRC, duty is a question of law for the court to determine, and absent a duty, there can be no breach of duty, hence, no negligence or liability based upon a breach of duty. *State v. Flanigan* (1986), Ind. App., 489 N.E.2d 1216, 1217. Furthermore, the question of duty should not be defined by the specific factual circumstances of a case:

"... the problems of 'duty' are sufficiently complex without subdividing it ... to cover an endless series of details

of conduct. It is better to reserve duty for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d 855, 857; (quoting W. Prosser and W. Keeton, The Law of Torts § 53 at 356 (1984)). Therefore, we will address the question of duty in the following general terms: Does a landowner owe a duty to the members of the general public traveling on an adjacent roadway?

Clearly, in the State of Indiana, a landowner is under a duty to exercise reasonable care to prevent injury caused by the defective or dangerous condition of the property to travelers on adjacent roadways. *See Holiday Rambler Corp. v. Gressinger* (1989), Ind.App., 541 N.E.2d 559, 562; *Pitcairn v. Whiteside* (1941), 109 Ind.App. 693, 34 N.E.2d 943, 946–47; *see also Blake v. Dunn Farms, Inc.* (1980), 274 Ind. 560, 413 N.E.2d 560, 564 (Supreme Court of Indiana cited *Pitcairn* with approval, but found that the owner of the subject property lacked the required relationship with the agency causing the problem, and, therefore, found the landowner owed the plaintiff no duty.) As stated in *Pitcairn:*

> "the occupier of land abutting on or adjacent to or in close proximity of, a public highway, owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway from any unreasonable risks created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reason-

able precautions to avoid harm to such travelers. The traveling public is entitled to make free use of highways and streets, and an occupier of land, which is adjacent to or in close proximity of such highway or street, has no right to so use the property occupied by him as to interrupt or interfere with the exercise of such right by creating nor maintaining a condition that is unnecessarily dangerous."

34 N.E.2d at 946. However, the supreme court later expressly rejected the notion that a landowner had a duty to "continually inspect the perimeters of his property, particularly along an adjacent highway, to make sure that dangerous conditions do not arise for those traveling on the highway." *Blake, supra.*[1] The supreme court also stated that before the duty articulated in *Pitcairn* became operable some relationship between the landowner and the agency causing the injury must be demonstrated. *Id.*

In *Pitcairn*, of course, such a relationship existed. In that case heavy smoke created by the railroad-landowner's employees, who were attempting to burn off the railroad's right of way, lingered on a well-traveled roadway. The plaintiff slowed his vehicle because of low visibility when driving through the dense smoke and was struck from behind by another vehicle. Discussing *Pitcairn*, the supreme court stated: "We emphasize that in that case the railroad itself was causing the dangerous condition that visited itself upon the traveled portion of the highway." *Blake*, 413 N.E.2d 564.

In *Holiday Rambler*, the plaintiff was injured when his motorcycle was struck by a skidding vehicle that had been forced to brake for another vehicle exiting a manufacturing plant parking lot. The parking

---

1. We note that while no duty to continually inspect the perimeter of one's property exists, the evidence presented at trial indicated that Valinet undertook such inspections on his own initiative. Further evidence reflects that the tree was visible from a road which Valinet admitted having traveled frequently, and that the precarious condition of the tree was visible from the roadway. Therefore, the fact that Val-

inet was not under a duty to inspect his property, would not serve to excuse Valinet from discharging the general duty of reasonable care to travelers on adjacent roadways, where the evidence presented at trial supported the conclusion that Valinet knew about the tree and its poor condition, yet maintained the tree on his property.

lot had four exits onto the highway on which the motorcycle was traveling, and all the plant employees exited onto this highway at approximately the same time. This court held that the manufacturer-landowner did have the requisite relationship to the agency causing the problem, noting that:

> "Danny Slabaugh was one of Utilimaster's [the manufacturer] employees. If he had not stopped eight feet into the road to avoid hitting two other employees also exiting from Utilimaster, Martha Martin would not have applied her brakes continuing the chain of events which eventually injured [the plaintiff]."

*Holiday Rambler*, 541 N.E.2d at 562. Therefore, the court found that the issue of whether or not the manufacturer properly discharged his duty of reasonable care to travelers on the adjacent roadway was an issue properly left for jury determination. *Id.*

However, as stated earlier, the supreme court in *Blake* determined that a landowner of property having fences which had fallen into disrepair, could not be held to owe a duty to an individual whose automobile struck a horse which had escaped from the landowner's property where the landowner was neither the owner nor the keeper of the horse. *Blake*, 413 N.E.2d at 564. The court found the relationship between the landowner and the horse to be too tenuous to establish a duty on the part of the landowner. *Id.*

Similarly, in the case of *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d 857, this court reversed the denial of a landowner's motion for summary judgment where the plaintiff was injured after colliding with a vehicle forced to inch out into cross traffic because of the long queues of trucks waiting to unload their commodities at a grain elevator located on the property. Emphasizing that the *Pitcairn* rule should be limited to cases in which the defendant has maintained or conducted some activity on the premises beyond the mere fact of operating a business which causes off-premises injury, this court then noted that in *Snyder* "[t]here was

nothing in the way the elevator company [property owner] conducted its business which resulted in the long queues outside the business premises." 529 N.E.2d at 858. We then concluded that "the law does not impose a duty on a business to guard against injury to the public from the negligent acts of customers over which the business has no control and which injury occurs off the business premises." *Id.; also see Flanigan*, 489 N.E.2d at 1218–19.

We note that in both *Blake* and *Snyder*, the agency responsible for the injury was clearly outside the control of the landowner. Furthermore, while the automobiles in *Holiday Rambler* may seem analogous to the trucks in *Snyder*, there is one important difference in the two cases. The automobiles in *Holiday Rambler* were driven by employees of the landowner, and the danger created by the automobiles resulted from the configuration of the landowner's parking lot and the policies of the landowner regarding shift exit times. In contrast, the trucks in *Snyder* were driven by customers of the landowner and the evidence tended to show that the long line of trucks, the dangerous condition in *Snyder*, was an unusual occurrence completely outside the control of the landowners. Finally, in *Pitcairn*, of course, the railroad-landowner, through its employees, exercised complete control over the dense smoke which ultimately caused the plaintiff's injuries in that case.

After reviewing the foregoing cases, we find that the present case is in accord with *Pitcairn* and *Holiday Rambler*. Valinet and NRC, as landowners, exerted complete and exclusive control over the large, diseased tree which ultimately caused serious injuries to Ann Eskew. Such control establishes the necessary relationship between the agency causing injury, the tree, and the landowners, NRC and Valinet. We cannot say that as a matter of law, Valinet and NRC had no duty to protect travelers on the adjacent highway from harm resulting from this dangerous, albeit natural, condition of their land. Therefore, it is our opinion that the trial court did not err in allowing the jury to decide whether or not Valinet and NRC properly discharged their

duty of reasonable care in regard to the tree and its possible effect on travelers on the adjacent highway.[2]

 Valinet and NRC next argue that the trial court erred in allowing certain evidence to be presented at trial. Specifically, the landowners argue that allowing the Eskews to present evidence of Valinet's education, landholdings, background in real estate development, and personal beliefs as to the duties and responsibilities owed by a landowner to travelers on adjacent highways was irrelevant and prejudicial.

 The admissibility of evidence is within the sound discretion of the trial court. *Rust v. Guinn* (1981), Ind.App., 429 N.E.2d 299, 305. The court of appeals will not disturb the trial court's exercise of that discretion unless the trial court's action is clearly erroneous and against the facts and circumstances before the court or reasonable inferences to be drawn therefrom. *Brenneman Mechanical & Electric, Inc. v. First National Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, 240, *trans. denied.* In the present case, Valinet and NRC claim that the trial court abused its discretion in admitting certain evidence which the landowners contend was irrelevant. Evidence is relevant if it tends to prove a material fact or if it makes an inference more probable than it would be absent the evidence. *United Farm Bureau Mutual Insurance Co. v. Cook* (1984), Ind.App., 463 N.E.2d 522, 528. Evidence may be found to be relevant although its ability to persuade is extremely slight. *Pilkington v. Hendricks County Rural Electric Membership Corp.* (1984), Ind.App., 460 N.E.2d 1000, 1010.

In the present case the Eskews had to prove that Valinet failed to discharge his duty to use reasonable care to avoid the creation or maintenance of a hazardous condition on his property which could cause injury to travelers on the adjacent roadway. Clearly Valinet did not create the hazard of the dead tree, but the Eskews could demonstrate that Valinet maintained

the hazard. Valinet's pleadings, depositions and interrogatories made it plain that Valinet would deny knowing that the tree was in poor condition or a safety hazard. The trial court was not outside the bounds of reason in allowing the Eskews to counter the import of this reasonably anticipated testimony by demonstrating that Valinet was experienced in matters of real estate, had developed some sense of a landowner's obligations, and had at least attempted to live up to those obligations by conducting vehicular inspection tours on occasion. While admittedly this information is hardly conclusive on any element of the Eskew's case, such evidence does tend to bolster the inference that Valinet knew or should have known about the precarious condition of the tree and the hazard that the tree created. The trial court did not abuse its discretion in admitting evidence of Valinet's education, landownership, and opinions concerning the obligations of a landowner.

 Valinet and NRC next argue that the trial court abused its discretion in allowing the Eskews to present testimony from witnesses not identified until four days before trial. Failure to disclose the names of these witnesses constituted a violation of the trial court's discovery orders. The sanctions available to a trial court when a party fails to comply with a discovery order are within the trial court's sound discretion. *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 715. This court will not reverse a discretionary decision of a trial court unless manifest abuse of that discretion is shown. *Chuck Callahan Ford, Inc. v. Watson* (1983), Ind.App., 443 N.E.2d 79, 80–81. An order compelling disclosure and a continuance are the appropriate remedies in such situations. *Osborne v. State* (1981), Ind., 426 N.E.2d 20, 25. Where a violation is grossly misleading or demonstrates bad faith exclusion of the evidence may be required. *Id.; see also Patel v. State* (1989), Ind.App., 533 N.E.2d 580, 585.

---

**2.** Because we have determined that Valinet and NRC did have a duty to protect travelers on the adjacent roadway, we needn't discuss whether or not Valinet's conduct constituted the assumption of a duty not otherwise imposed.

■ In the present case we think it important to note that the landowners were offered a continuance in which to prepare for the testimony of the two witnesses brought to the attention of the trial court only four days before trial. However, the landowners chose not to avail themselves of this remedy. The landowners claim that pursuing a continuance would jeopardize their ability to defend the suit against them because of the advanced ages of Valinet and their expert witness. The landowners do not claim however, that the condition of these elderly gentlemen was such that serious doubts about their ability to testify a few weeks later than scheduled should have been entertained by the trial court. We consider the landowners' failure to take advantage of the usual remedy afforded when witnesses are presented at the eleventh hour to be akin to failing to request a continuance in such a situation. This failure constitutes waiver of any error pertaining to a discovery order. *Patel*, 533 N.E.2d at 585.

■ Furthermore, the landowners specifically state in their reply brief that they are not claiming that the Eskews' failure to produce the witnesses at an earlier point in the trial was the result of bad faith on the part of the Eskews. As stated by our supreme court:

> "Even assuming the defendant had preserved the issue of noncompliance with the discovery order, *exclusion of the evidence is appropriate only when the prosecution has blatantly and deliberately refused to comply with the discovery order.*"

*Patel*, 533 N.E.2d at 585. Therefore, given that Valinet and NRC are not claiming bad faith on the part of the Eskews, not only was exclusion of the witnesses' testimony not mandated, but a resort to exclusion might very well have constituted reversible error.

■ The landowners' final claim involving the admissibility of evidence concerns the testimony of the Eskews' forestry expert who testified at trial that in his opinion the tree which injured Ann Eskew had "an unreasonable risk of falling over on a windy day." The landowners argue on appeal that the trial court erred in allowing the testimony into evidence because an insufficient foundation was established for such an opinion and because the question of whether or not the condition of the dead tree constituted an unreasonable risk was within the common knowledge of the jury and should have been left for the jury's determination.

■ Acceptance of opinion testimony by experts is within the sound discretion of the trial court and will not be disturbed on appeal unless there is a clear showing of abuse of discretion. *Public Service of Indiana, Inc. v. Nichols* (1986), Ind.App., 494 N.E.2d 349, 358, (quoting *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1337.) It is true that in order to be admissible, expert opinion must be preceded by a foundation of evidence establishing the witness's credentials and the reliability of the material used in the witness's field, *Yang v. Stafford* (1987), Ind.App., 515 N.E.2d 1157, *trans. denied.* The general standard for determining the admissibility of an expert's opinion is whether that opinion will aid the jurors in understanding the facts of the case. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 328. A jury is always free to accept or reject the expert opinion once admitted. *City of Indianapolis v. Robinson* (1982), Ind.App., 427 N.E.2d 902, 910. Finally, we note that an opinion by an expert witness upon an ultimate fact in issue is not excludable for the reason that it usurps the function of a jury. *Devaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732, 737.

In the present case, the Eskews' forestry expert testified that there existed an unreasonable risk that the tree would fall over on a windy day. Information regarding the condition of the tree and the tree's likely activity under weather conditions similar to those which were present on the day of the accident, was necessary in order for the jury to determine whether or not the landowners were negligent in maintaining the tree on their property. Because the Eskews' expert witness' opinion aided the jury in making a necessary determination

by sorting out the facts of the case, the opinion was admissible.

 The landowners' final contention is that the trial court erred in refusing or modifying various final instructions tendered by the landowners. Reversible error occurs when the trial court refuses to give a tendered instruction which is a correct statement of the law, is applicable to the facts of the case, and is not adequately covered by the other instructions given. *Brokers, Inc. v. White* (1987), Ind.App., 513 N.E.2d 200, 203; *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249, 1255.

The landowners' tendered Final Instruction No. 3 was titled "Duty to Passerby on the Highway" and read as follows:

"You are instructed that under Indiana law, the owner of property does not owe a duty to persons on adjacent roadways to render his premises reasonably safe, to discover dangerous conditions, or to take precautions to protect the passerby. The landowner owes travelers on adjacent highways only the duty of refraining from willfully or wantonly injuring the travelers or acting in any way which would increase the traveler's peril. A showing of ordinary negligence is not sufficient to provide a basis for any liability on the part of the landowner for injuries to travelers on adjacent highways."

Record at 315. This instruction clearly misstates the duty a landowner owes to travelers on adjacent highways as discussed more fully previously in this opinion. *See Holiday Rambler*, 541 N.E.2d at 562; *Pitcairn*, 34 N.E.2d at 946–47. Because the instruction misstates the law, the trial court did not err in refusing to tender the landowners' Final Instruction No. 3 to the jury.

The landowners next claim that the trial court committed reversible error in failing to tender their Final Instruction No. 11, entitled "Assumed Duty" to the trial court. We hold that because we have determined that Valinet and NRC had an affirmative duty to remove the tree, and because the jury reasonably could have found that Vali-

net and NRC breached this duty, any error in refusing to give to the jury the landowners' Final Instruction No. 11 was harmless. *See* n. 2, *supra.*

The landowners next contend that the trial court erred in refusing to tender their Final Instruction No. 8 which defined the term fault. In another instruction the trial court defined "fault" in the present case by equating that term with the concept of negligence and then explained the elements of negligence. We consider such instructions to adequately cover the definition of the term "fault" in the present case.

The landowners also argue that the trial court erred in amending their Final Instruction No. 1 entitled "Burden of Proof on the Issues" by deleting reference to specific elements of the negligence claim presently before the court. As in the preceding issue, a review of the instructions as a whole reveals that the elements deleted from the landowners' Final Instruction No. 1 are adequately covered by the trial court's other instructions.

 Finally, the landowners argue that the trial court erred in refusing to give the landowners' Final Instruction No. 9 which instructed the jury that it could find Ann Eskew to be contributorily negligent and could allocate a portion of the fault to her under the Indiana Comparative Fault Act. As correctly noted by the landowners, a party is entitled to have instructions based on their theory of the case if within the issues and if there is evidence tending to support their contentions. *Campbell v. City of Mishawaka* (1981), Ind.App., 422 N.E.2d 334, 339. However, in the present case nothing in the record indicates Eskew was in any way contributorily negligent.

 Knowledge and appreciation of peril are essential elements of contributory negligence. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, 680. Furthermore, while a motorist has a duty to maintain a proper lookout, the motorist is not required to anticipate extraordinary hazards nor to constantly expect or search for unusual dangers. *Brock v. Walton* (1983), Ind.App., 456 N.E.2d 1087, 1091.

Ann Eskew did not know and could not have anticipated that a large dead tree would come crashing onto her vehicle as she commuted to work. Because the evidence does not support the contention that Ann Eskew was contributorily negligent, the trial court did not err in refusing to tender Final Instruction No. 9 to the jury.

## Conclusion

The evidence presented at trial was sufficient to support the trial court's conclusion that the landowners, Valinet and NRC, owed a duty of reasonable care to Ann Eskew, a traveler on an adjacent roadway, and the trial court did not err in allowing a jury to determine that this duty was breached. All evidence questioned was properly admitted into evidence, and the trial court properly instructed the jury.

Judgment affirmed.

RATLIFF, C.J., and SULLIVAN, J., concur.