### PITCAIRN ET AL. *v.* WHITESIDE.

[No. 16,623. Filed June 23, 1941. Rehearing denied October 23, 1941. Transfer denied November 27, 1941.]

F. E. *Zollars* and R. S. *Teeple,* both of Fort Wayne, for appellants.

*Barrett, Barrett & McNagny, Leigh L. Hunt, Mentor Kraus,* and J. A. *Bruggeman,* all of Fort Wayne, for appellee.

BEDWELL, J.—On October 16, 1937, at about the hour of 1:45 p. m., appellee was injured while operating an automobile in a westerly direction upon United States Highway No. 24, between the cities of Peru and Wabash and near a point where United States Highway No. 24 intersects with Indiana State Highway No. 115. His

injuries occurred when the automobile he was operating was struck in the rear by an automobile operated by one Catherine Hively, who was traveling in the same direction on the same highway. Near the scene of the accident the appellants operated a railroad, the tracks of which paralleled United States Highway No. 24 between the cities of Peru and Wabash.

It appears from allegations in appellee's complaint, that the defendants, by their servants and agents, started a fire on the right of way of the railroad operated by them, and caused and permitted smoke to gather upon, collect and roll over such highway; that said smoke was heavy and dense and obscured and obstructed the view and vision of travelers lawfully on the public highway; that when appellee came upon such cloud of smoke it was necessary for him to proceed through the same to reach his destination, the city of Peru; that while proceeding through such smoke, on his own side of the road, in a careful and prudent manner, his automobile was struck in the rear by another automobile, and as a result of this collision he was injured.

Appellants were charged with negligence in the following particulars:

"(1)  In so burning off its said right-of-way as to cause a heavy and dense cloud of smoke to collect on and hang over a public highway, thereby obscuring and obstructing the view and vision of travelers lawfully on said highway to their great peril and danger.

"(2)  In permitting the fire started by it on its right-of-way to escape from said right-of-way and on to and upon adjacent lands and fields, thereby causing a heavy and dense cloud of smoke to roll across and upon a public highway, to the great danger and peril of persons lawfully on said highway.

"(3) In creating a hazard to the traveling public upon a highway, by causing a fire to burn adjacent to said highway under such circumstances as to permit heavy clouds of smoke to blow or roll across said highway in such quantities and so close to the surface of the highway as to interfere with the visibility of travelers thereon.

"(4) In failing to take any precautions to protect the traveling public on said highway when the defendants knew or by the exercise of reasonable care should have known that they had caused a dark cloud of smoke to collect over a heavily traveled highway, all at a time when they had available agents and servants to regulate traffic or to take other reasonable precautions to protect the public."

There was a trial by jury which returned a verdict against appellants and for appellee in the sum of fifteen thousand dollars ($15,000). The assigned error is the overruling of appellants' motion for a new trial. Appellants are relying upon the insufficiency of the evidence to sustain the verdict, and the refusal of the trial court to give to the jury each of appellants' requested Instructions Nos. 31, 32, 33, and 34.

There is evidence in the record to sustain the following facts: That at the time of his injury, appellee was traveling in a westerly direction on United States Highway No. 24 at a speed of three or four miles an hour; that the highway was paved for uniform width of eighteen feet; that the right of way of the Wabash Railway was about one hundred sixty feet south of the highway at the place where the collision occurred, and ran parallel with it in a general easterly and westerly direction; that a fire had been started on appellants' right of way between 8 and 9 o'clock a. m., while a gang of colored workmen, employed by appellants, were putting in rails; that there were one hundred ten men in this gang, exclusive of the foreman and assistant

foreman; that the weather was cold and the wind was blowing from the tracks to the highway; that between 10 and 11 o'clock a. m. the fire was burning all up and down the right of way, and at noon there was a lot of smoke coming across the highway; and that the smoke kept getting heavier from the middle of the forenoon on; that the fire spread out toward the highway in a fan shape with a small part of the fan next to the railroad tracks; that the accident happened between 1:30 and 2 o'clock p. m., and at the time of the accident no one was flagging traffic on the highway at either end of the smoke cloud; that the highway was a heavily traveled paved highway; that after the accident in which appellee was injured, the fire was put out. That on the day of the accident appellee had left the town of Wabash to go to Peru; that he was traveling west and had driven about a mile when he encountered the very dense smoke; that he slowed down to nearly a stop and proceeded on through the smoke; and that he was traveling through the smoke when the car operated by Catherine Hively, and traveling in the same direction, hit the back of his car; that he was traveling on the north half of the highway at the time of the collision; that at the time he started into the smoke there was nothing behind him; that when he got into the smoke cloud and at the time of the accident, the smoke was very dense and extended clear across the road, but when he came up to the smoke cloud he did not know how far it extended to the west; that he was about one hundred fifty to two hundred feet from the smoke when he slowed his car down and then he could not see the highway beyond the smoke, but when he slowed down he shifted the gears of his automobile, and when he entered the smoke he turned on the dimmers of his headlights; that when he shifted gears he had

almost stopped; that he did not come to a complete stop at any time before he entered the smoke.

Appellants' first contention is that the evidence is insufficient to show actionable negligence, and that the smoke over the highway was a mere condition, the creation of which was not negligence.

The occupier of land abutting on or adjacent to or in close proximity of a public highway owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway from any unreasonable risks created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reasonable precautions to avoid harm to such travelers. The traveling public is entitled to make free use of highways and streets, and an occupier of land which is adjacent to or in close proximity of such highway or street has no right to so use the property occupied by him as to interrupt or interfere with the exercise of such right by creating or maintaining a condition that is unnecessarily dangerous.

In the case of *Ft. Wayne Cooperage Co.* v. *Page* (1908), 170 Ind. 585, 589, 84 N. E. 145, 23 L. R. A. (N. S.) 946, the Supreme Court of this state says:

> "One may not always conduct a lawful business on his own premises as he pleases. The law requires that every one in the use and enjoyment of his property shall have regard for the rights of others, and will not allow him to set up or prosecute a business on his own land in a way that is calculated to, or in fact does, materially or injuriously affect the rights of adjoining owners, or that substantially or harmfully interferes with or injures those rightfully traveling on an adjoining highway. *Wright* v. *Compton* (1876), 53 Ind. 337; *Island Coal Co.* v. *Clemmitt* (1897), 19 Ind. App. 21."

In the case of *Rock Oil Co.* v. *Brumbaugh* (1915), 59 Ind. App. 640, 651, 108 N. E. 260, this court says:

"One is entitled to the reasonable use of his property even if such use incidentally injures the property of his neighbor, but liability for an injury arises when it is caused by such unreasonable use of one's property as might have been anticipated to result in damage to the person or property of others in the vicinity. Both our courts of last resort have approved the rule declared in the case of *Fletcher* v. *Rylands* (1866), L. R. 1 Exch. *265, *278, to the effect that the person who for his own purposes brings on his lands and collects and keeps there anything likely to cause injury and damage to the property of others if it escapes, must keep it at his peril, and if he fails to do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape."

There was a duty upon appellants to refrain from the creation or maintenance of any condition upon their right of way which subjected the traveling public, using public highways in the vicinity of such right of way, to unreasonable risks or conditions that were unnecessarily dangerous. A violation of this duty would constitute negligence. The evidence was sufficient to entitle the jury to determine whether or not appellants were guilty of negligence.

The next contention of appellants is that the sole proximate cause of the injuries to appellee was the negligence of the driver of the car which struck the car of appellee.

In the case of *Swanson* v. *Slagal, Admrx.* (1937), 212 Ind. 394, 406, 8 N. E. (2d) 993, 998, the court quotes with approval, the following definition of proximate cause:

" 'Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without

which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences.' "

See *Cincinnati, etc., R. Co. v. Armuth* (1913), 180 Ind. 673, 677, 103 N. E. 738, and cases cited; *Rock Oil Co. v. Brumbaugh* (1915), 59 Ind. App. 640, 650, 108 N. E. 260.

Had it not been for the smoke upon the highway, the accident would not have happened. The negligence of appellants was, therefore, one of the concurring causes which produced the injury and without which the accident would not have occurred; and it will be treated as one of the proximate causes unless an independent agency has intervened in such a way as to break the chain of causation, and to become the sole proximate cause. Appellants contend that the act of Catherine Hively was an independent intervening act of a third person which broke the chain of causation, and that such act became and was the sole proximate cause of appellee's injuries.

In the case of *Evansville, etc., R. Co. v. Allen* (1905), 34 Ind. App. 636, 640, 73 N. E. 630, this court quotes with approval the following:

" 'Negligence may, however, be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.' "

In the case of *Swanson v. Slagal, Admrx.* (1937), 212 Ind. 394, 413, 8 N. E. (2d) 993, 1001, the court says:

"As stated above this court has utilized as a practical rule of legal cause the test of foreseeability. The result of the holding in the foregoing cases is that if the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by the plaintiff is one of a class which was reasonably foreseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. It is the function of the jury to determine whether the defendant's act is a substantial factor in producing the injury of the plaintiff and whether such injury was reasonably foreseeable at the time of the defendant's misconduct. It is for the court to determine whether the plaintiff's interest which has suffered is protected by law and whether the interest is protected against the 'particular hazard encountered.' "

In the Restatement of the Law of Torts, Sec. 449, p. 1202, the text states:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

And, in Sec. 447, on p. 1196, the following:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, . . ."

Appellants call attention to *Wilcox* v. *Urschel* (1936), 101 Ind. App. 627, 200 N. E. 465, and *City of Gary* v. *Struble, Admx.* (1939), 106 Ind. App. 518, 18 N. E. (2d) 465. The cases are readily distinguishable from the case for determination. While it is probably true that the original actor in each of such cases should

have reasonably foreseen a collision or an accident of the class described in plaintiff's complaint, no close connection is shown between the condition created by the original actor and the act of the intervening agent that makes the intervening act a concurring cause instead of an independent cause.

In the instant case the smoke upon the highway was not a mere condition, unconnected with the act of the intervening agent. It was an active agency produced by appellants which materially interfered with the vision of both appellee and the intervening agent, to such an extent that the jury could have properly determined that the collision would not have happened without its concurrence, and that it was a substantial factor in producing an injury that was reasonably foreseeable.

The third contention of appellants is that appellee was guilty of contributory negligence, as a matter of law, in failing to wait in a place of safety when view of the highway was obscured by temporary or transitory obstruction.

Appellant is relying upon the cases of *Morley* v. *C. C. C. & St. L. R. Co.* (1935), 100 Ind. App. 515, 530, 194 N. E. 806, and *Oleson* v. *Lake Shore & M. S. R. Co.* (1895), 143 Ind. 405, 42 N. E. 736. In the first of such cases, which was an action to recover damages for personal injuries alleged to have been sustained as a result of a collision between the automobile in which plaintiff was riding as a guest of her husband and a freight train being operated by defendant over a public crossing, it appeared by the allegations of complaint that there were clouds of smoke from a train that had passed over a grade crossing which obstructed the vision of the crossing. This court states the following:

"The presence of the clouds of smoke, whether discovered before or after they had driven into them, was notice to appellant and her husband that they were in close proximity to a railroad track and a locomotive engine, and it was the duty of her husband to immediately slacken the speed of the automobile so it could be brought to a stop within the range of his vision or to stop his automobile until the clouds of smoke had been dissipated and cleared away. His neglect to do so was a failure to exercise ordinary care for the safety of appellant and himself."

In the case of *Oleson* v. *Lake Shore & M. S. R. Co.* (1895), 143 Ind. 405, 42 N. E. 736, the plaintiff sought to recover damages for an injury received by him while attempting to cross a railroad track at a grade crossing. It appeared that the plaintiff attempted to cross this particular crossing immediately after the passage of a train whose smoke obscured his view, and he was struck by a train traveling on another track in the opposite direction. The court held, under the facts of the particular case, that it was the duty of plaintiff to wait in a place of safety until he could see and hear, and thus with reasonable certainty ascertain that no westbound train was approaching.

These cases defining the duties of a traveler upon a public highway who approach a railway crossing, when his view of the crossing was obscured by smoke from a passing locomotive, are not controlling as to the duty of appellee who was merely traveling along a public highway and who was not approaching the point where the highway intersected a railroad. When the appellee approached a cloud of smoke that obscured his vision because the same was across the highway, this court cannot say, as a matter of law, that it was his duty to stop until the smoke had been dissipated by the wind. If he stopped upon the high-

way, it is apparent, under conditions that then existed, the stopping of an automobile upon the paved portion of a heavily traveled public highway was in itself dangerous. Contributory negligence is a matter of defense, and it does not appear from the evidence that it was practical for appellee to drive off the paved portion of the highway. But whether appellee stopped upon the paved portion or drove off the paved portion, there was no way for him to determine whether the smoke clouds would shift their position or variable winds would blow the smoke cloud so he would be enveloped in smoke while stopped, and if so in as great or greater danger than he would be if he proceeded with caution along the highway. We cannot say, as a matter of law, that appellee's failure to stop constituted contributory negligence. Under the circumstances here appearing, it was clearly within the province of the jury to determine whether appellee, under all the conditions and circumstances, exercised reasonable care.

In the case of *Bixby* v. *Pickwick Stage Co.* (1933), 131 Cal. App. 739, 741, 21 P. (2d) 972, the plaintiff brought an action for personal injury for damages arising out of collision in the daytime between an automobile driven by plaintiff and the stage of the defendant. It happened when plaintiff was operating his automobile in an easterly direction and the stage was traveling westerly along a public highway in the State of California. Shortly prior to the accident, plaintiff saw a film of smoke over the highway and he pulled to his right side of the road at a speed of about twenty miles an hour and entered the same. After passing through the first cloud of smoke he observed another strata of smoke about one hundred feet away and he entered the second smoke screen with his speed decreased to about eighteen miles per hour, when a billow-

ing roll of very dense smoke suddenly blew in front of him and completely obstructed his vision. He immediately applied his brakes and almost simultaneously he was struck by the westbound stage of the defendant which also struck another car immediately ahead of the car of plaintiff and then swerved to the left side of the road and struck plaintiff. The defendants claimed that plaintiff was guilty of contributory negligence as a matter of law, since he could not stop his car within the range of his vision, and that under those circumstances it was incumbent upon him to halt and wait for the smoke to disperse before proceeding further. The court says:

"The authorities in California and elsewhere do not seem to support this contention. It is almost uniformly the rule that whether the conduct of a person in driving into smoke, fog, dust or mist offends the doctrine of ordinary care, is ordinarily a question to be determined by the court or jury. (*Marsh* v. *Burnham,* 211 Mich. 675 [179 N. W. 300]; *Upton* v. *Hines,* 197 Iowa 566 [197 N. W. 453]; *Clinger* v. *Payne,* 271 Pa. 88 [113 A. 830]; *Seibert* v. *A. Goldstein Co.,* 99 N. J. Law 200 [122 A. 821]; *Devoto* v. *United Auto Transp. Co.,* 128 Wash. 604 [223 Pac. 1050]; *Mitsuda* v. *Isbell,* 71 Cal. App. 221 [234 Pac. 928].)"

See also, *Farrer* v. *Southern Ry. Co.* (1932), 45 Ga. App. 84, 163 S. E. 237; *Keith* v. *Yazoo & M. V. R. Co.* (1934), 168 Miss. 519, 151 So. 916; *Memphis Consol. Gas & Electric Co.* v. *Creighton* (1910), 183 F. 552; *Miller* v. *Union Pacific R. Co.* (1933), 290 U. S. 227, 78 L. Ed. 285, 54 S. Ct. 172.

In the case of *Pisarki* v. *Wisconsin T. & C. Co.* (1921), 174 Wis. 377, 380, 183 N. W. 164, 165, the plaintiff brought an action for personal injury. The complaint alleged that defendant had erected and was maintaining upon its property a construction house containing

a boiler and steam engine and other machinery, and that steam and clouds of vapor issued therefrom and were caused to pass and were shot across the public highway at that point; that the steam and clouds of vapor obstructed the view on said highway and rendered the same extremely dangerous to pedestrians, passengers, and drivers of vehicles and all persons using the highway; and that at the time of the accident one Labinski was operating an automobile upon the highway in a negligent and careless manner and ran into the cloud of steam and vapor and struck plaintiff, who was walking on the highway, knocking him down and injuring him. It was contended by the defendant that the act of Labinski in operating his automobile upon the highway, under the circumstances, was an intervening cause that broke the causal connection between the defendant's act and the injuries sustained by the plaintiff. The court found that the defendant was guilty of negligence in the manner in which it had constructed its plant, so that the steam and vapor was cast upon and across the highway. Upon the questions of contributory negligence and intervening agency, the court says:

"It being established that the defendant was guilty of negligence in operating the plant in the manner in which it was constructed so as to make travel upon the public highway dangerous, the negligence of Labinski, if any, and that of the defendant company concurred in causing the injuries complained of. We think the questions as to the contributory negligence of the plaintiff and the proximate cause of plaintiff's injuries were properly for the jury and their determinaton is conclusive."

It appears in the case under consideration that there was ample evidence from which the jury could determine that the appellants negligently imperiled the safety

of persons who were lawfully using a much traveled public highway. It did this by creating a condition whereby clouds of smoke were permitted, through a period of several hours, to be blown upon and across the highway so that the vision of travelers would be obscured. The appellee was injured by a motorist whose vision was obscured because of this negligent conduct of appellants. The appellants could and should have foreseen this result. There was evidence that it could easily have prevented this condition, for immediately after the accident appellants caused their agents and employees to put out the fire which produced the condition. Under such circumstances, there exists evidence from which the jury had a right to determine the causal connection between the negligence charged and the injuries proven, and to determine whether the result was foreseeable. The trial court did not err in submitting the case to the jury, and there is evidence to sustain the verdict of the jury.

Appellants are objecting because of the refusal of the trial court to give each of their Instructions Nos. 31, 32, 33, and 34.

By Instructions Nos. 31, 33, and 34, the court was requested to tell the jury that if it found certain specified facts concerning the smoke across the highway, then, and under such circumstances, it was the duty of the appellee, in the exercise of ordinary care, to wait in a place of safety or to stop his automobile until the smoke was dissipated, and that under such circumstances his failure to do so was negligence.

In the case of *Thompson* v. *Town of Fort Branch* (1931), 204 Ind. 152, 169, 178 N. E. 440, the court was requested to give a particular instruction on the issue

of contributory negligence. The court uses the following language:

"We do think, however, that Instruction No. 8 unduly emphasized the ability of the deceased to avoid the fatal accident; and we feel that this emphasis might confuse a jury into considering the ability of the deceased to avoid the accident the measure or test of due care under the circumstances. A jury should not be encouraged to reason back from the accident to the conclusion that there was not due care, or else the accident would not have happened. The proper function of an instruction on contributory negligence is to suggest to the jury the questions (1) did the injured party exercise that degree of care and caution which a reasonably careful and prudent person would have exercised under the same or similar circumstances? and (2) if he did not exercise that degree of care and caution, did his conduct contribute proximately to the injury? From a practical standpoint we think the attention of the jury should be focused upon the question of whether the actual conduct of the injured party was that of a careful and prudent person rather than upon the question whether he could have avoided the injury by the exercise of ordinary care."

By Instruction No. 6, tendered by appellants, the trial court properly instructed the jury concerning contributory negligence. Instruction No. 17, tendered by appellants, also, fully covered the question of contributory negligence.

These requested instructions were further objectionable because they ask the court to tell the jury, as a matter of law, that under the circumstances specified in the instructions, it was the duty of appellee to wait in a place of safety until he had a clear view, and if he failed to do so his failure constituted negligence. As we have heretofore pointed out, it does not appear from the evidence that there was any place of safety in which appellee could wait. The

stopping and parking of his automobile upon a much traveled public highway, under modern conditions, is not a place of safety. If he did wait before entering the first cloud of smoke who could tell but what he would be enveloped by smoke and be in a more dangerous situation than he would be in if he proceeded with caution. The situation was not such that the court could tell the jury, as a matter of law, that there was any duty upon appellee to stop or wait until the smoke was dissipated. This is a case where it was within the province of the jury to determine whether the appellee exercised reasonable care in proceeding as he did.

There was no error of the trial court in refusing to give appellants' tendered Instruction No. 32. By this instruction appellants sought to have the trial court instruct the jury, as a matter of law, that it was the duty of Catherine Hively, in the exercise of ordinary care, to wait in a place of safety until her view was clear, and that failure to do so would be negligence; and if such negligence was the proximate cause of the injuries of the plaintiff, then, and under such circumstances, the verdict of the jury should be for the defendants. If Catherine Hively was guilty of concurring negligence which proximately caused the injury of appellee, that would not relieve appellants. There was no evidence of any place of safety at which Catherine Hively could wait. By a number of other instructions given by the trial court, the jury was fully instructed concerning the acts or omissions of Catherine Hively, and there was no error on the part of the trial court in refusing to give this particular Instruction No. 32.

The judgment is affirmed and it is so ordered.

NOTE.—Reported in 34 N. E. (2d) 943.