**HOLIDAY RAMBLER CORPORATION and Utilimaster Corporation, Appellants (Defendants Below),**

v.

**Gregory GESSINGER, Appellee (Plaintiff Below).**

**Gregory S. GESSINGER, Appellant (Plaintiff Below),**

v.

**STATE of Indiana, Appellee (Defendant Below).**

**No. 50A03–8804–CV–105.**

Court of Appeals of Indiana, Third District.

July 31, 1989.

R. Kent Rowe, R. Kent Rowe, III, Rowe, Foley & Huelat, South Bend, for appellants Holiday Rambler Corp. and Utilimaster Corp.

John D. Ulmer, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for Gregory S. Gessinger, appellant and appellee.

Linley E. Pearson, Atty. Gen., G. Richard Potter, Deputy Atty. Gen., Indianapolis, for appellee State of Ind.

GARRARD, Presiding Judge.

This is a consolidated appeal from the Marshall Circuit Court. Holiday Rambler Corporation and Utilimaster Corporation (Utilimaster) bring an interlocutory appeal from the trial court's denial of their motion for summary judgment. Gregory Gessinger is also appealing the trial court's grant of the State of Indiana's (State's) motion for summary judgment. We affirm.

On July 13, 1983, at approximately 3:05 p.m. Danny Slabaugh, an employee of Uti-

limaster, was leaving the plant in his pick-up truck. As he attempted to make a left hand turn into the southbound lane of State Road 19 (SR 19) he noticed a motorcycle and a car also leaving the plant and making left turns from the driveway to his immediate north. To avoid hitting these vehicles, Slabaugh stopped his car approximately eight feet into the northbound lane of SR 19.

At this same time Martha Martin was driving her car northbound on SR 19. Seeing Slabaugh's truck enter the road, Martin applied her brakes to avoid hitting the truck. Instead, she skidded approximately one hundred and sixteen (116) feet, struck Slabaugh's right fender, spun around into the southbound lane of SR 19, skidded sideways another seventy-four (74) feet and eventually collided with Gessinger, who was driving his motorcycle in the southbound lane. As a result of the collision Gessinger was seriously injured.

At the location where this accident occurred, SR 19 is a two lane asphalt road approximately twenty-four (24) feet wide. The speed limit is fifty-five (55) miles per hour. There are four (4) driveways within eight hundred (800) feet exiting from the Utilimaster plant into the northbound lane of SR 19.

Utilimaster manufactures, produces and assembles commercial vehicles. The manufacturing employees' shift ends at 3:00 p.m. each day. Employees exit from the four driveways and enter onto SR 19 to travel in either direction. There are no warning signs, signals or other traffic control devices on SR 19 in the vicinity of Utilimaster.

Gessinger brought suit against Utilimaster and the State for the damages he sustained as a result of the collision. Both Utilimaster and the State moved for summary judgment. The trial court granted the State's motion but denied Utilimaster's. Gessinger and Utilimaster now appeal. Three issues have been certified for our review. However, because of the disposition of this case it is necessary to only address the following two issues:

1. Whether Holiday Rambler and/or Utilimaster Corporation, as owners/lessees of a commercial property adjacent to a public highway, owe a duty to the public traveling upon such highways to reduce the number of driveways exiting from the Utilimaster plant onto SR 19, to stagger the quitting time of defendant's employees or to otherwise take precautions so as to control the conduct of, or otherwise protect third persons traveling on the public highway.

2. Whether the trial court erred in granting summary judgment in favor of the State based on the immunity provisions of Indiana's Tort Claims Act.

Utilimaster argues that the trial court erred in denying its motion for summary judgment because it owed Gessinger no duty of care and without a duty there can be no liability. Utilimaster claims that there is no duty upon an owner of land adjacent to a highway to control the conduct of third parties off the landowner's property and over whom the landowner has no control.

Utilimaster's argument is based on two recent opinions: *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d 855 and *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216. In *Snyder Elevators* trucks were lined up to have their grain weighed at the elevator. Four blocks away Tonja Buck was stopped at the intersection of Fourteenth and Main Streets. Her view of Main Street was obstructed to the west by an Easterday truck filled with grain waiting in line for the elevator. Buck inched her way forward and into the path of the Bakers, who collided with her car. Bakers brought suit against Easterday Brothers and Snyder Elevator. The trial court granted Snyder Elevator's motion for summary judgment then vacated its entry by granting Bakers' motion to correct errors.

We reversed the trial court and held that Snyder owed no duty to Bakers. We stated that the law does not impose a duty on a business to guard against injury to the public from the negligent acts of a custom-

er over which the business has no control where the injury occurs off the business's premises. *Snyder* at 859. In so holding we reaffirmed our decision in *Flanigan* that a business owner owed no duty to his customers when their injury occurred off the business premises and was the result of actions of a stranger over whom the defendant had no control. In both of these cases we were concerned with the lack of relationship between the landowner and the third person causing the injury.

■ However, Gessinger argues that Utilimaster was under a duty to exercise reasonable care to prevent injury caused by the property's defective or dangerous condition to persons traveling on SR 19. We agree. This duty was described in *Pitcairn v. Whiteside* (1941), 109 Ind.App. 693, 34 N.E.2d 943, 946:

> The occupier of land abutting on or adjacent to, or in close proximity of, a public highway, owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway from any unreasonable risks created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reasonable precautions to avoid harm to such travelers. The traveling public is entitled to make free use of highways and streets, and an occupier of land, which is adjacent to or in close proximity of such highway or street, has no right to so use the property occupied by him as to interrupt or interfere with the exercise of such right by creating or maintaining a condition that is unnecessarily dangerous.

In *Pitcairn*, railroad employees were burning off the right of way sending heavy smoke billowing into the roadway, causing a collision due to drivers' lack of visibility. In reaffirming *Pitcairn* the court in *Blake v. Dunn Farms* (1980), 274 Ind. 560, 413 N.E.2d 560 stated:

> We emphasize that in that case, the railroad itself was causing the dangerous condition that visited itself upon the traveled portion of the highway. . . .

> Here, the owner of the property had *no relationship* to the agency causing the problem, and no duty to investigate to determine if there was a problem, emergency or dangerous condition. (emphasis added)

*Blake*, 413 N.E.2d at 564.

■ In the present case the landowner of the property did have a relationship to the agency causing the problem. Utilimaster provided its employees four driveways within eight hundred feet and allowed hundreds of people to exit at 3:00 p.m. each day onto a state road with a speed limit of fifty-five miles per hour. (At the time about 750 people were employed at the plant. All production employees left at 3:00 p.m.) These employees exited from the driveways in both directions with no established traffic flow pattern. Danny Slabaugh was one of Utilimaster's employees. If he had not stopped eight feet into the road to avoid hitting two other employees also exiting from Utilimaster, Martha Martin would not have applied her brakes continuing the chain of events which eventually injured Gessinger.

According to the analysis in *Pitcairn* and subsequent cases, the owner of land adjacent to a highway owes the duty to the traveling public to prevent injury to travelers upon the highway from any unreasonable risks created by the property's dangerous condition which the landowner knew or should have known about. Whether this duty was discharged is a question of fact for the jury.

Therefore, the trial court properly denied Utilimaster's motion for summary judgment in the present case.

In Gessinger's certified issue for appeal he argues that the trial court erred by granting the State's motion for summary judgment. He claims that the State breached its duty to him and to the traveling public by failing to exercise reasonable care in improving, operating and maintaining SR 19 and by failing to take precautions to render SR 19 in a reasonably safe condition at the area in question. Furthermore, he states that none of the immunities contained in the Indiana Tort Claims Act

(ITCA), IC 34–4–16.5–1 to 34–4–16.5–20, protect the State from liability for failing to take any action to correct or improve this dangerous highway situation. We disagree.

Broad statements of law regarding the State's general duty to exercise reasonable care in the design, construction and maintenance of highways do not override specific statutory provisions. *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958. Because the traditional tort standard of negligence does not provide an adequate basis for evaluating certain governmental decisions, these decisions have been granted immunity under the ITCA. The act protects governments from liability in certain circumstances. *Peavler v. Monroe County Board of Commissioners* (1988), Ind., 528 N.E.2d 40, 42. When specific statutory immunities apply they shield the government from any general theory of negligence. Therefore, if the State can show specific statutory immunity it cannot be found liable.

Gessinger argues that the State is not immune under the ITCA based on discretionary function immunity, IC 34–4–16.-5–3(6), for its failure to reduce the speed limit, failure to install warning signs or other traffic control devices and failure to reduce the number or restrict the use of the private driveways and accesses to SR 19 in the vicinity of Utilimaster. He correctly states that to benefit from the discretionary function immunity the State must prove that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Peavler, supra*, 528 N.E.2d at 46. He contends that the State did not show any evidence that the decision not to take any of the above safety precautions was the result of a policy oriented decision making process. Because of this crucial omission, Gessinger claims, the State cannot be shielded from immunity.

The State responds that it was not required to show a policy oriented decision making process because immunity exists on grounds other than IC 34–4–16.5–3(6), discretionary functions immunity. The State

first claims that the 55 mph speed limit on SR 19 in front of Utilimaster creates no basis for liability because of IC 34–4–16.5–3(7) which states:

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment;

The State argues that the establishment of a speed limit is the adoption of a rule or regulation by the State which is immune. Likewise, the State claims, the failure to reduce the speed limit constitutes the failure to adopt a rule or regulation which is also immune. The Indiana General Assembly has established the maximum lawful speed limit on highways as fifty-five (55) miles per hour except when a special hazard exists. IC 9–4–1–57. We regard the State's action as adopting a rule or regulation within the plain meaning of the statute. Where a statute is clear and unambiguous, we only look at its plain meaning. *Seymour National Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1229.

The speed limit is alterable by the State Highway Commission pursuant to IC 9–4–1–61 whenever it is determined on the basis of an engineering and traffic investigation that the maximum speed is greater than is reasonable or safe under the conditions found to exist at any place in the state highway system. Gessinger argues that the ability to alter the speed limit is a discretionary decision of the State Highway Commission pursuant to *Peavler*. However, a distinction exists between the decision by the Highway Commission to change a legislatively enacted speed limit, as in the present case, and a county's decision to place a warning sign, as in *Peavler*.

To determine whether or not a part of the highway is extra hazardous necessitating a reduction in the speed limit pursuant to IC 9–4–1–61, an inspection of the highway would have to be performed. This function of the State Highway Commission would also be immune pursuant to IC 34–4–16.5–3(11) which states:

(11) failure to make an inspection, or making an inadequate or negligent in-

spection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety;

Because of these reasons the State is immune from liability for failing to reduce the posted maximum speed limit.

The State next acknowledges that there is no evidence in the record which shows that the State ever engaged in a policy oriented decision making process with respect to the placement of warning signs in the vicinity of Utilimaster.

However, the State claims that there is also no evidence that the State is in any way negligent for not having warning signs. In fact, the State points out, Gessinger's own engineering expert testified in his deposition that the absence of a warning sign would not be a poor engineering practice and that he did not think a lack of warning devices was a cause of this accident.

Since there is no evidence in the record that the State failed to exercise adequate traffic engineering in the placement of highway warning signs or that the absence of warning signs contributed to cause the collision, summary judgment on that count was proper.

■ Gessinger claims that the issue of causation was not raised at the trial level and therefore cannot be raised on appeal. However, summary judgment will be affirmed if sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51. Gessinger's final argument is that the State is liable for failing to close multiple access points onto the highway; failing to require an internal service drive or frontage road, and failing to impose reasonable restrictions upon adjoining landowners concerning driveways and their use. However, the State claims that these allegations

amount to no more than the issuance, revocation, failure to issue, or failure to revoke a permit license or order for which the State is immune. IC 34–4–16.5–3(10) states that a governmental body is not liable if a loss results from:

> (10) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law;
> . . . .

By statute the Indiana General Assembly has empowered the Indiana Department of Highways to adopt regulations for the granting of private entrances and driveway permits to landowners whose property abuts state highways. 120 IAC 2–1–1–120; IAC 2–1–30. Although Gessinger disagrees, this decision to grant or not grant permits is discretionary [1] under law as required by IC 34–4–16.5–3(10). Within this discretion Utilimaster was granted its driveway permits by the State. Therefore, we find that the State is immune under IC 34–4–16.5–3(10).

For all of the above reasons, we hold that the trial court did not err when it granted the State's motion for summary judgment.

Affirmed.

BAKER, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent from the majority's determination that Utilimaster, as the owner of land adjacent to a highway, owed a duty of care to Gessinger and other members of the general public traveling on the highway. Such a determination represents a departure from precedent limiting the

---

1. 120 IAC 2–1–2.1 states:

Sec. 1. The Indiana department of highways is *authorized* to *determine* and *establish* such requirements and restrictions for driveway approaches *as may be necessary* to provide for ... the safety and convenience of traffic on the highway. A written permit application *shall be considered* by the department and, if in accordance with properly established regulations and requirements, a permit shall be granted subject to appropriate conditions and provisions contained therein.... (emphasis added).

duty of a landowner to protect members of the public at large.

The duty of a landowner to exercise ordinary care in the management of its property usually does not extend to persons outside the land, on adjacent property or on a sidewalk or highway. *Nava v. McMillan* (1981), 123 Cal.App.3d 262, 266, 176 Cal. Rptr. 473, 476, *cited with approval in State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216. An exception to the general rule exists where the physical harm caused to the persons outside the land is a result of dangerous activities conducted on the land. *Id.*

To remove a case from the general rule proscribing off-premises liability, two conditions must be satisfied. First, there must be a relationship between the landowner and the agency causing the problem on the adjacent property. *Blake v. Dunn Farms, Inc.* (1980), Ind., 413 N.E.2d 560, 564. Secondly, it must be shown that the landowner maintained a hazardous condition or conducted some activity on its property, beyond the mere fact of operating a business, which caused the injury on the adjacent property. *Snyder Elevators, Inc. v. Baker* (1988), Ind.App., 529 N.E.2d 855, 858.

*Pitcairn v. Whiteside* (1941), 109 Ind. App. 693, 34 N.E.2d 943, upon which the majority relies, is a case falling within the exception to the general rule. In *Pitcairn*, the defendant railroad caused heavy smoke to drift across the traveled portion of a highway. Because the railroad itself caused the problem on the abutting highway, a clear relationship was established. Moreover the railroad, by burning off the right-of-way, had engaged in a hazardous activity beyond the mere operation of its business. The Supreme Court therefore found a duty on the part of the railroad to exercise reasonable care to prevent injury to travelers upon the highway. *Id.* at 701, 34 N.E.2d at 946–947.

The majority stresses that a relationship existed in the instant case between Utilimaster and the problem on State Road 19. However, there is no indication that the problem resulted from a condition maintained or activity conducted by Utilimaster, *beyond the mere fact of operating a business.* To the contrary, the exodus of employees from the work place when their shift ends is incidental to the operation of a business. Because Utilimaster had engaged in no activity beyond the operation of its business, it owed no duty to Gessinger or other members of the general public traveling on State Road 19.

For the foregoing reasons, I vote to remand with instructions to enter summary judgment in favor of Utilimaster.