FILED

Aug 20 2020, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael W. Phelps
Stewart Phelps Wood
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
TYSON FRESH MEATS, INC. &
TYSON FOODS, INC.

Bruce D. Jones
Keith A. Gaston
Rachel O. Webster
Bradley M. Owen
Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Judy Reece,

*Appellant-Plaintiff,*

v.

Tyson Fresh Meats, Inc., et al.,

*Appellees-Defendants.*

August 20, 2020

Court of Appeals Case No.
20A-CT-214

Appeal from the Wayne Superior
Court

The Honorable Jay L. Toney,
Special Judge

Trial Court Cause No.
89D01-1508-CT-38

**Bailey, Judge.**

# Case Summary

Judy Reece, individually and as the Guardian of Walter Reece ("Walter"), (collectively, "Reece") appeals a grant of summary judgment in favor of Tyson Fresh Meats, Inc. and Tyson Foods, Inc. (collectively, "Tyson"). We affirm.

# Issues

Reece presents two consolidated and restated issues for review:

I.     Whether the trial court abused its discretion in excluding from the summary judgment record interrogatory responses and a portion of the opinion of an accident reconstructionist; and

II.    Whether the trial court erred in granting summary judgment to Tyson upon Reece's negligence claim.

# Facts and Procedural History

On August 10, 2014, at approximately 7:30 p.m., ninety-two-year-old motorist Harold Moistner ("Moistner") was traveling southbound on Boyd Road in Wayne County. As his vehicle approached the intersection of Boyd Road and Hunnicut Road, Connie Sherwood ("Sherwood") was driving her vehicle eastbound on Hunnicut Road. Sherwood saw Moistner, who was driving very slowly, motion to her to enter the intersection. Sherwood then turned south onto Boyd Road.

[4]     After turning, Sherwood looked in her rearview mirror. She observed Moistner execute a U-turn at Hunnicut Road west of Boyd Road, approach the intersection, hesitate briefly, and pull out. Moistner's vehicle collided with a motorcycle operated by Walter. Walter suffered catastrophic brain injuries.

[5]     Moistner left the scene of the accident but he was located and interviewed by Wayne County Sheriff's Deputy Tyler Dougherty ("Deputy Dougherty"). Moistner appeared to be unable to recount the accident details but he conveyed his perception that the motorcycle had pulled out in front of him. Deputy Dougherty compiled a report in which he included the following observation:

> Grass on the northwest corner of Hunnicut Road and Boyd Road was tall. This grass would have limited or prohibited the view of Driver 1 to see Vehicle 2 traveling southbound.

(App. Vol. II, pg. 86.) Tyson's plant was located on the northwest side of this intersection. A drainage ditch ran parallel to southbound Boyd Road.

[6]     On August 24, 2015, Reece filed a complaint for damages against Moistner. During discovery, Reece served Moistner with Interrogatories and scheduled his deposition for January 27, 2016. In addition to any assistance that may have been provided by his attorney, Moistner was assisted by his daughter, Nola Geise ("Geise"). Geise wrote down Moistner's verbal responses but did not recall writing down a response to Interrogatory 21, which sought information as to any claimed affirmative defenses. Moistner received and signed a printed copy of his Responses to Interrogatories, which, as to Interrogatory 21, stated in part that Moistner's view at the intersection had been

blocked by tall grass.[1]  Geise brought Moistner to the scheduled deposition but Moistner questioned "what accident" and was not sworn in to provide testimony.  (*Id.* at Vol. III, pg. 50.)

[7]  On March 29, 2016, Reece filed an Amended Complaint, adding as defendants the State of Indiana, Wayne County, and Tyson.  Regarding Tyson, Reece alleged:

> That on or about August 10, 2014, the defendant, Tyson Fresh Meats, Inc., negligently allowed grass to grow so high on their property that it blocked the view of the roadway where Hunnicut Road and Boyd Road intersect, and therefore is at fault for the collision described in paragraph 2 above.

(App. Vol. II, pg. 54.)

[8]  Tyson answered the complaint on June 14, 2016.  On June 19, 2016, Moistner died.  Eventually, Reece settled her claims with Moistner's estate and Wayne County.  The State of Indiana was dismissed as a party.

[9]  On December 5, 2017, Tyson filed a motion for summary judgment and its designation of evidence.  Although Tyson had initially denied ownership of the drainage ditch at the intersection of Boyd Road and Hunnicut Road, Tyson

---

[1] Interrogatory 21 provides:  "Specify in detail the facts which establish each Affirmative Defense that you assert in this case, giving names and addresses of all witnesses and describing all documents upon which you rely to support such claim."  (App. Vol. II, pg. 96.)

The Answer included an objection, legal authority, and information as to collateral source payments.  It also included the language:  "Defendant states that when he came to a stop at the intersection, his view was blocked by tall grass and prevented him from fully seeing the Plaintiff's vehicle."  (*Id.*)

admitted ownership for purposes of summary judgment. Reece filed a response in opposition to summary judgment together with a designation of evidence. Included within Reece's designations were Moistner's responses to interrogatories and an affidavit of Shawn Gyorke ("Gyorke"), a certified accident reconstructionist. In part, Gyorke's affidavit stated:

> On May 16, 2017, I performed a site investigation at the intersection of Boyd Road and Hunnicut Road in Wayne County, Indiana, as well as examining sightlines across the property of Tyson's property located at the intersection of Boyd and Hunnicut.

> Based upon my investigation it is my professional opinion that the placement of Tyson's sign in conjunction with uncontrolled foliage growth on Tyson's property and within the draining ditch along the west side of Boyd Road inhibited Harold Moistner's view and line of sight as he made a U-turn on Hunnicut Road and approached Boyd Road heading eastbound on Hunnicut Road.

(*Id.* at pg. 121.)

[10] On May 3, 2018, Tyson filed a motion to strike Moistner's responses. On February 19, 2019, Tyson filed a motion to exclude Gyorke's opinion affidavit testimony.

[11] The trial court conducted a hearing on the pending motions. On December 30, 2019, the trial court granted summary judgment to Tyson, concluding that landowner Tyson had no duty to Reece, as a member of the traveling public. The trial court also entered two orders, one excluding Moistner's interrogatory

responses and the second excluding Gyorke's opinion with respect to Tyson's sign. Reece now appeals.

# Discussion and Decision

## Standard of Review

[12] We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We construe the evidence in favor of the nonmovant and resolve all doubts against the moving party. *Pfenning v. Lineman*, 947 N.E.2d 392, 397 (Ind. 2011) (quotation omitted). The party moving for summary judgment bears the initial burden to establish its entitlement to summary judgment. *Id*. at 396–97. Only then does the burden fall upon the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. *Id*. at 397 (quotation omitted).

[13] A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*.

[14] The summary judgment process is not a summary trial. *Hughley*, 15 N.E.3d at 1003–04. Indiana consciously errs on the side of letting marginal cases proceed

to trial on the merits, rather than risk short-circuiting meritorious claims. *Id.* at 1004. Nevertheless, a grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Kramer v. Catholic Charities of Diocese of Fort Wayne-South Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015).

[15] Reece's claim against Tyson is one of negligence. To recover on a negligence claim, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015). Summary judgment is rarely appropriate in negligence cases because such cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer*, 32 N.E.3d at 231. However, summary judgment for a defendant is appropriate if the moving party negates at least one element of the negligence claim. *American Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532 (Ind. Ct. App. 1999).

## Evidentiary Rulings

[16] A review of summary judgment is dependent upon what evidence the parties designated for review. *Beal v. Blinn*, 9 N.E.3d 694, 698 (Ind. Ct. App. 2014). A trial court has broad discretion in making evidentiary rulings and we will reverse its decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Further, the trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.* at 698-99.

[17] Indiana Trial Rule 56(C) provides: "At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." Relevant to our discussion here, Reece designated the portion of Moistner's response to Interrogatory 21 stating that his view at the intersection was blocked by tall grass.

[18] Tyson moved to strike Moistner's interrogatory responses as inadmissible hearsay because Moistner allegedly had exhibited signs of incompetency and cross-examination was impossible due to his death. As to Interrogatory 21 in particular, Tyson took the position that Moistner's attorney likely drafted the response and he lacked personal knowledge of the circumstances of the collision. The trial court struck the responses as hearsay. We need not reach the issue of whether this was an abuse of discretion, because there was other evidence in the designated record cumulative of the challenged portion of Interrogatory 21.

[19] Reece alleged in her complaint that the grass at the intersection was tall enough to block a motorist's view. In addition to the response to Interrogatory 21, she designated the report of the responding officer. Deputy Dougherty's contemporaneous review of the accident site resulted in his opinion that "this

grass would have limited or prohibited the view of Driver 1 to see Vehicle 2 traveling southbound." (App. Vol. II, pg. 86.) Tyson did not designate any evidence to the contrary. Under Indiana's summary judgment standard, the trial court had to consider the grass to be tall enough to block the view. Reece did not suffer prejudice from the exclusion of interrogatory responses.

[20] Reece also challenges the trial court's exclusion, in part, of Gyorke's affidavit. Pursuant to Ind. Evidence Rule 702(a), expert testimony must convey knowledge that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Evidence Rule 702(a) assigns to the trial court a gatekeeping function of ensuring that an expert witness's testimony both rests on a reliable foundation and is relevant to the task at hand. *Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 966 (Ind. Ct. App. 1999). Knowledge admissible under the Rule must connote more than subjective belief or unsupported speculation. *Id.* Expert testimony must be supported by appropriate validation or good grounds based on what is known, establishing a standard of evidentiary reliability. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 472 (Ind. Ct. App. 1998).

[21] Gyorke opined that the placement of Tyson's sign in conjunction with the growth of Tyson's foliage had inhibited Moistner's view at the intersection. At Tyson's behest, the trial court struck the reference to the sign placement as speculative. Sherwood, the sole eyewitness, placed Moistner's vehicle past the Tyson sign when he turned his vehicle and proceeded into the roadway. Gyorke explained in his deposition that the sign placement was irrelevant unless Sherwood's account was inaccurate. As such, Gyorke's opinion as to

the sign placement was merely speculative, and the trial court did not abuse its discretion by excluding it.

## Grant of Summary Judgment

[22] Reece's complaint alleged that Tyson was negligent because it had allowed grass to grow so high on its property that the grass blocked the view at the intersection of Boyd and Hunnicut Roads. For summary judgment purposes, Tyson admitted ownership of the ditch at the northwest corner of the intersection. As the nonmovant obliged to show prima facie the absence of a genuine issue of material fact, T.R. 56, Tyson did not designate evidence to contradict Reece's allegation that grass was sufficiently tall to block the view at the intersection.

[23] But Tyson argued that, under the common law, where a natural condition is wholly contained within a parcel of property, the owner or occupier owes no duty to a traveler using an adjacent public thoroughfare. Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992). Whether there is a legal duty owed by one party to another in a negligence action is generally a question of law for the court to decide. *Chandradat v. State, Ind. Dep't of Transp.*, 830 N.E.2d 904, 908 (Ind. Ct. App. 2005), *trans. denied*.

[24] It is well established under Indiana common law that a landowner owes a duty to the traveling public to exercise reasonable care in the use of his property so as not to interfere with safe travel on public roadways. *Pitcairn v. Whiteside*, 109

Ind. App. 693, 34 N.E.2d 943 (1941). The facts of *Pitcairn* were that railroad employees started a fire on the railroad's right of way and smoke from the fire blew over a nearby road, obscuring visibility of motorists who were involved in an accident. The *Pitcairn* Court concluded that the railroad owed a duty to Whiteside, a member of the traveling public, explaining:

> The occupier of land abutting on or adjacent to, or in close proximity of, a public highway, owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway from any unreasonable risks, created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reasonable precautions to avoid harm to such travelers. The traveling public is entitled to make free use of highways and streets, and an occupier of land, which is adjacent to or in close proximity of such highway or street, has no right to so use the property occupied by him as to interrupt or interfere with the exercise of such right by creating or maintaining a condition that is unnecessarily dangerous. …
>
> The law requires that every one in the use and enjoyment of his property shall have regard for the rights of others, and will not allow him to set up or prosecute a business on his own land in a way that is calculated to, or in fact does, materially or injuriously affect the rights of adjoining owners, or that substantially or harmfully interferes with or injures those rightfully traveling on an adjoining highway.

*Id.* at 946.

[25] Subsequently, in *Holiday Rambler Corp. v. Gessinger*, 541 N.E.2d 559 (Ind. Ct. App. 1989), a manufacturing plant was operated on the defendant's property,

which was located adjacent to a state highway. At 3:00 p.m., as the plant's shift ended, 750 people were released onto the highway from four plant exits, all located within 800 feet of each other. *See id.* at 562. During one congested exodus of vehicles, a motorcyclist was struck and injured. A panel of this Court agreed with the motorcyclist that the plant owners owed a duty to travelers on the adjacent highway and had created a dangerous condition on their land which adversely affected the neighboring highway. As such, a landowner whose plant emits smoke that drifts over the highway, or one who creates a traffic jam on the highway during plant shift changes, may be liable to a traveler.

[26] Smoke and a traffic jam are artificially created conditions arising from the use of land. By contrast, a natural condition is "land that was not changed by any acts of humans" and includes "the natural growth of vegetation, such as weeds, on land that is not artificially made receptive to them." *Spears v. Blackwell*, 666 N.E.2d 974, 977 (Ind. Ct. App. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 363 cmt. b (1965)). Vegetation planted by humans is not a natural condition. *Id.*

[27] In *Valinet v. Eskew*, 574 N.E.2d 283 (Ind. 1991), our Indiana Supreme Court considered whether a landowner should be liable to a passing motorist who was injured when a tree located on the landowner's property fell into the roadway. In analyzing the landowner's duty, our Indiana Supreme Court adopted the Restatement (Second) of Torts § 363, titled "Natural Conditions." That section provides:

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

[28] The Court acknowledged the general rule of non-liability for harm caused outside land by a natural condition thereon but also recognized that courts had imposed liability when landowners had actual knowledge of a dangerous natural condition:

> The general rule of nonliability for natural conditions on land arose at a time when land was largely unsettled and the burden imposed on a landowner to inspect it for safety was held to exceed the societal benefit of preventing possible harm to passersby. Courts have imposed liability, however, when landowners had actual knowledge of a dangerous natural condition, regardless of location. Furthermore, a line of cases developed in which courts imposed a duty on landowners in more heavily populated areas to inspect their trees to try to prevent their posing an unreasonable risk of harm to passing motorists. The rationale for imposing such a duty on urban landowners is that the risk of harm to highway users is greater and the burden of inspection on landowners is lighter in such populated areas.
>
> We agree that the differing duties placed on owners of land with respect to differing demographics is correct. We, therefore, adopt § 363 of the RESTATEMENT. Whether the land is in an area of

sufficient population density to invoke the rule requires a factual consideration of such factors as land use and traffic patterns. Also, whether the landowner exercised the requisite reasonable care will require the fact finder to weigh the seriousness of the danger against the case with which it may be prevented. As this Court has previously held, a landowner need not continually inspect his property for natural dangers. However, under some circumstances, fulfilling a landowner's duty to passing motorists might reasonably require periodic inspections to be sure that the premises do not endanger those lawfully on the highway.

*Valinet*, 574 N.E.2d at 285–86 (citations omitted).

[29] After our Indiana Supreme Court's adoption of § 363, a panel of this Court had occasion to consider, in the context of planted vegetation, "whether the scope of the [landowner] duty extends to refraining from creating conditions wholly on a landowner's property which may impair a traveler's vision of oncoming traffic at an intersection." *Sheley v. Cross*, 680 N.E.2d 10, 12 (Ind. Ct. App. 1997), *trans. denied.* Margaret Sheley was killed when her vehicle collided with a vehicle driven by Kimberly Cross at an intersection. In addition to suing the county and other driver, the Estate of Margaret Sheley sued Buryle and Hazel Grossman, who owned land adjacent to the intersection. Allegedly, the Grossmans had negligently planted crops on their land such that a motorist's view of oncoming traffic was impaired. *See id.* at 11.

[30] The *Sheley* Court reviewed the *Pitcairn* and *Holiday Rambler* cases, observing that, in each case, the landowner's "conduct caused a hazard to visit itself upon the roadway." *Id.* at 13. The Court then considered *Blake v. Dunn Farms, Inc.*,

274 Ind. 560, 561, 413 N.E.2d 560 (1980), wherein the Indiana Supreme Court had addressed the duty of a landowner to persons on an adjacent public road "particularly as that duty applies to the ownership and keeping of domestic animals." Robert Blake was a passenger in an automobile which struck a horse on a portion of the state highway running through the land of Dunn Farms, Inc. Blake alleged negligence on the part of the owner and the occupier of the land in permitting fences to fall into disrepair such that the horse could escape. *Id.* at 563. The *Blake* Court briefly discussed *Pitcairn*, explicitly agreeing with the decision but finding the facts and circumstances of *Blake* unlike those in *Pitcairn*. In distinguishing *Pitcairn*, the Court explained:

> The facts in this case do not bring it within the rule set out in *Pitcairn v. Whiteside*, (1941) 109 Ind. App. 693, 34 N.E.2d 943, where it was held to be the duty of a property owner adjacent to a highway to exercise reasonable care to prevent injury caused by the property's defective or dangerous condition. The defective or dangerous condition in Pitcairn was heavy smoke going across the traveled portion of the highway, caused by a railroad, through its employees, in burning off the right-of-way. *We emphasize that in that case, the railroad itself was causing the dangerous condition that visited itself upon the traveled portion of the highway.*

413 N.E.2d at 566 (emphasis added.)

[31]     Having reviewed *Pitcairn, Holiday Rambler,* and *Blake*, the *Sheley* Court found the Indiana Supreme Court's focus upon the railroad's affirmative conduct to be particularly instructive. The *Sheley* Court concluded: "to the extent a landowner owes a duty to travelers on an adjacent roadway, that duty is limited

to refraining from creating hazardous conditions that visit themselves upon the roadway. Where an activity is wholly contained on a landowner's property, there is no duty to the traveling public." 680 N.E.2d at 13.

[32] Here, the alleged dangerous condition was confined to the Tyson property. In her amended complaint, Reece alleged that Tyson allowed high grass growth "on their property." (App. Vol. II, pg. 54.) Reece made no allegation of encroachment upon the roadway. Thus, consistent with *Sheley*, the grass growth did not give rise to a duty to the traveling public.

[33] As an alternative to common law duty, Reece argued that Tyson had voluntarily assumed a duty when its employee mowed the drainage ditch. Reece deposed John Lewellen ("Lewellen"), a Tyson retiree, and learned that he had mowed the drainage ditch during his employment with Heinhold Hog Market from 1975 to 1995 and his employment with Tyson from 1995 to 2012. According to Lewellen, he did so without explicit instruction from his employer, but he was paid for his time, and he intended to make the area "presentable to the public." (*Id.* at 105). Lewellen had last mowed the ditch in 2012, the year of his retirement.

[34] A duty of care may arise where a party gratuitously or voluntarily assumes such a duty. *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983). "The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Id.* The existence and extent of such a duty are ordinarily questions

for the trier of fact. *Marks v. NIPSCO*, 954 N.E.2d 948, 956 (Ind. Ct. App. 2011). However, the court will decide the issue as a matter of law where there is no genuine issue of material fact. *Id.*

[35] The assumption of such a duty requires affirmative and deliberate conduct such that it is "apparent that the actor ... specifically [undertook] to perform the task that he is charged with having performed negligently." *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind. 2014) (internal citation omitted). Liability for the breach of an assumed duty is expressed in the Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012), which states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> (a) The failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>
> (b) The person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

"Thus, to impose liability resulting from breach of assumed duty, it is essential to identify and focus on the specific services undertaken. Liability attaches only for the failure to exercise reasonable care in conducting the 'undertaking.'" *Yost*, 3 N.E.3d at 517.

[36] Tyson did not dispute Lewellen's deposition testimony that he was paid by Tyson for his time spent mowing the drainage ditch twice monthly for several years, albeit without specific instruction to do so. Tyson highlights Lewellen's testimony that he mowed solely for aesthetic reasons. Thus, according to Tyson, Lewellen never intended to render a service to the motorists at the public intersection. But regardless of Lewellen's motivation or Tyson's acquiescence, Lewellen ceased mowing upon his retirement in 2012.[2] Reece has suggested that an assumed duty cannot be abandoned, but she provides no authority for this proposition, and we are aware of none.

[37] Even were we to assume that Lewellen's conduct at one time gave rise to a "special relationship between the parties," *Plan-Tek*, 443 N.E.2d at 1219, Lewellen ceased to participate in the relationship upon his retirement. For approximately two years preceding the collision, Lewellen was not performing his "undertaking," *Yost*, 3 N.E.3d at 517, negligently or otherwise. There is no act providing a basis for liability under § 42 of the Restatement. Reece may not obtain a reversal of the grant of summary judgment on grounds of the assumption of duty.

---

[2] According to Tyson, Wayne County employees mowed the ditch after 2012.

# Conclusion

[38]     Tyson negated the element of duty in Reece's negligence claim. Reece did not satisfy the burden of persuading this Court that summary judgment was erroneously granted. Nor has Reece shown reversible error in the trial court's evidentiary rulings.

[39]     Affirmed.


Vaidik, J., concurs.
Baker, Sr. J., dissents in part with opinion.

| | |
|---|---|
| Judy Reece, | Court of Appeals Case No. |
| *Appellant-Plaintiff,* | 20A-CT-214 |
| v. | |
| Tyson Fresh Meats, Inc., et al., | |
| *Appellees-Defendants.* | |

**Baker, Senior Judge, dissenting in part.**

[40]   I fully concur with respect to the resolution of the evidentiary issue, but I respectfully dissent from the majority's decision to affirm the trial court's order granting summary judgment in favor of Tyson.

[41]   The evidence is undisputed that the grass on Tyson's property was sufficiently tall to block the view at the intersection in question. Our appellate courts have held that private property owners bear a duty of reasonable care in the use of their property in a way that does not interfere with safe travel on public roadways. *Pitcairn*, 34 N.E.2d at 946; *see also Valinet*, 574 N.E.2d at 285 (holding that "[w]hether the land is in an area of sufficient population density to invoke the rule" is a question of fact, as is the question of "whether the landowner exercised the requisite reasonable care").

[42] In this case, I believe that there are multiple issues of fact rendering summary judgment inappropriate. Specifically, I believe that a factfinder needs to resolve the questions of the population density of the area at the intersection as well as whether Tyson exercised the requisite reasonable care in maintaining the vegetation on its property. Consequently, I would reverse the trial court's order on summary judgment and remand for further proceedings.