**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**RICHARD A. WAPLES**
Waples & Hanger
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
CITY OF INDIANAPOLIS:

**BETH A. GARRISON**
Deputy Chief Litigation Counsel
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CITIZENS ENERGY GROUP:

**RYAN A. COOK**
Citizens Energy Group
Indianapolis, Indiana

**BRIAN W. WELCH**
**ALEX E. GUDE**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana



FILED
May 13 2013, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

PAUL KOMYATTI, JR.,                        )
                                           )
    Appellant-Plaintiff,               )
                                           )
    vs.                                )        No. 49A04-1209-CT-445
                                           )
THE CONSOLIDATED CITY OF                   )
INDIANAPOLIS-MARION COUNTY and             )
CITIZENS ENERGY GROUP,                     )
                                           )
    Appellees-Defendants.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1009-CT-41889

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

One afternoon in June 2010, Paul Komyatti, Jr., rode his bicycle to a nearby Indianapolis bar that he had biked to approximately three times in the last thirty days. He had also traveled that route in a vehicle approximately six times during that time span and had seen potholes in the street each time. He stayed at the bar for approximately three hours and drank at least two twelve- or sixteen-ounce beers.

It was still light out when Komyatti started biking home on the left side of the street, in violation of Indiana law. He was traveling at least twenty miles per hour on a downhill slope when he saw two vehicles approaching him near a railroad overpass. He decided to move left as far as he could and ride through a puddle beneath the overpass. According to Komyatti, the puddle concealed a pothole that stopped his bike. He fell forward and lost consciousness. Komyatti, who was not wearing a helmet, suffered severe facial injuries and was transported to a hospital. A blood test indicated that his blood alcohol concentration ("BAC") was 137 milligrams per deciliter ("mg/dL"), which is 57 mg/dL over the legal limit for operating a vehicle.

Komyatti sued the Consolidated City of Indianapolis-Marion County ("the City") and Citizens Energy Group ("Citizens"), which stored coke on its property near the railroad

overpass.[1]  He alleged that the City was negligent in failing to maintain the street in a reasonably safe condition and that Citizens was negligent in allowing coke to escape its property and contribute to the formation of potholes.  The City filed a motion for summary judgment, asserting that Komyatti's conduct was contributorily negligent as a matter of law and that his violation of Indiana traffic statutes was contributorily negligent per se.  Citizens also filed a motion for summary judgment, asserting that it did not breach any duty to Komyatti and was not a proximate cause of his injuries.  The trial court summarily granted both summary judgment motions.

On appeal, Komyatti contends that the trial court erred in granting the summary judgment motions.  We conclude that Komyatti's conduct was negligent as a matter of law and was a proximate cause of his injuries.  As even a slight degree of negligence on a plaintiff's part, if it proximately contributed to his claimed damages, will completely bar recovery for a tort claim against a governmental entity regardless of any negligence on its part, we affirm the trial court's grant of summary judgment in favor of the City.  Also, because it is undisputed that Komyatti's injuries did not result from any dangerous activities conducted by Citizens on its property, we conclude as a matter of law that Citizens did not breach its duty to Komyatti as a member of the public traveling on Prospect Street and therefore affirm the trial court's grant of summary judgment in favor of Citizens.

---

[1] According to Citizens, "Coke is a manufactured product used in the manufacture of other products. It has the appearance of coal and has varying degrees of hardness."  Citizens' Br. at 1 n.2.

## Facts and Procedural History[2]

The designated evidence indicates that at approximately 5:00 p.m. on June 19, 2010, Komyatti left his home on Southern Avenue in Indianapolis and began pedaling his ten-speed bicycle toward a bar approximately ten to fifteen minutes away. He biked east to Meridian Street and then took the Pleasant Run bike trail over to Prospect Street. While biking east on Prospect Street, he rode on the south side of the street but may have moved to the north side of the street at some point. He had biked to the bar approximately three times in the past thirty days and had always taken the same route. He had also traveled that stretch of Prospect Street in a vehicle approximately six times in the past thirty days and had seen potholes in the street each time.

Komyatti turned south onto Southeastern Avenue and arrived at the bar. According to Komyatti, he drank two twelve- or sixteen-ounce glasses of beer while at the bar. At approximately 8:00 p.m., Komyatti left the bar. According to Komyatti, he did not feel intoxicated and believed that he was "of sound mind … to operate a bicycle." Appellant's App. at 133. According to bar manager Don Noe, who had "plenty of experience with people who have had too much alcohol to drink and who become impaired as a result," Komyatti "did not appear to be intoxicated. He was not slurring his speech, he did not have bloodshot eyes, he was steady on his feet, and he seemed fine." *Id*. at 289. When Komyatti rode away from the bar, "he seemed to be in complete control of the bicycle." *Id*. Noe "was not the least bit concerned about [Komyatti] and his ability to safely ride his bicycle when he left."

---

[2] We heard oral argument on April 25, 2013. We thank counsel for their presentations.

*Id*. at 290.  According to Komyatti's girlfriend, Jenny Sterling, Komyatti called her before he left the bar and told her that he had consumed "two buckets of beer."  *Id*. at 191.[3]  Sterling could "[n]ot really" tell that Komyatti had been drinking; his words "weren't slurred," and she believed that he was "fine to ride his bicycle home."  *Id*.

The sun had not yet set when Komyatti began to retrace his route homeward.  From Southeastern Avenue, Komyatti turned west onto Prospect Street and rode on the south (left) side of the street, facing traffic, in violation of Indiana law.  Ind. Code §§ 9-21-11-2, 9-21-8-2.[4]  As he neared a railroad overpass, he saw two eastbound vehicles coming toward him in his lane.  At that point, Komyatti was "on a downward slope" traveling "at least 20 miles an hour."  Appellant's App. at 170.  He moved left as far as he could to avoid the oncoming traffic and decided to ride "right into [a] puddle of water" beneath the overpass.  *Id*. at 168.[5]  According to Komyatti, the puddle concealed a pothole, which caused the bicycle to stop.  Komyatti, who was not wearing a helmet, fell forward off his bicycle and temporarily lost consciousness.

---

[3] Sterling explained, "I don't think it's like a bucket of draft beer or nothing, but I think they put them in ice or something."  Appellant's App. at 190-91.  According to Noe, the bar had not sold buckets of beer "for years, and did not do so on June 19, 2010."  *Id*. at 290.

[4] Indiana Code Section 9-21-11-2 says, "A person riding a bicycle upon a roadway has all the rights and duties under this article that are applicable to a person who drives a vehicle, except the following:  (1) Special regulations of this article.  (2) Those provisions of this article that by their nature have no application."  Indiana Code Section 9-21-8-2(a) says, "Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway [with certain exceptions not relevant here]."

[5] The weather had been sunny all day, but Komyatti believed that it had "rained the evening before."  Appellant's App. at 146.

One of the oncoming motorists, Angela Watts, saw Komyatti fall when he was approximately two car lengths in front of her. After she passed him, she looked in her rearview mirror and saw that he was not moving. She got out of her car and walked back toward him. According to Watts, when she approached Komyatti, she "smelled alcohol coming from him." *Id*. at 194. "The bicycle was still between his legs, and [she] saw that the tire of his bicycle was in a pothole that [she] could clearly see." *Id*. She did "not recall there being any water near and/or in the pothole that would have prevented him from seeing the pothole." *Id*.[6] Watts called 911. Komyatti "kept trying to get up and leave the scene, telling [Watts and another motorist] that he was okay," but they "repeatedly told him not to move— that the paramedics were on their way." *Id*.

Komyatti suffered severe facial injuries as a result of his fall and was transported to Wishard Hospital, where his blood was drawn. His BAC measured 137 mg/dL, which is 57 mg/dL above the legal limit for operating a vehicle. Ind. Code § 9-30-5-1.[7]

---

[6] It is interesting to note that the photo of a waterlogged trench drain and pothole on page 14 of Komyatti's brief is time-stamped two days after the accident occurred.

[7] Indiana Code Section 9-30-5-1(a) says,

> A person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per:
>    (1) one hundred (100) milliliters of the person's blood; or
>    (2) two hundred ten (210) liters of the person's breath;
> commits a Class C misdemeanor.

Indiana Code Section 9-13-2-196(f) provides in pertinent part that for purposes of Indiana Code Chapter 9-30-5, "vehicle" means "a device for transportation by land or air."

On September 23, 2010, Komyatti filed a negligence complaint against the City and Citizens, which stored coke in a staging area on Prospect Street near the overpass. The complaint alleged that the City had failed to maintain Prospect Street in a reasonably safe condition. The complaint also alleged that Citizens had failed to contain coke on its property and that coke runoff and spillage had contributed to the formation of potholes beneath the overpass.

On March 5, 2012, the City and Citizens filed separate motions for summary judgment. In its motion, the City argued that it was entitled to summary judgment because Komyatti's "conduct was contributorily negligent as a matter of law." Appellant's App. at 108. In its supporting brief, the City noted that contributory negligence is a complete bar to recovery in tort actions against governmental entities. The City also noted that Komyatti was familiar with the area where the accident occurred and that he

> (1) was legally intoxicated at the time of his accident; (2) rode his bicycle on the wrong side of the street into oncoming traffic; (3) did not wear a helmet; (4) traveled "pretty fast"—at least twenty miles an hour on the downward slope of Prospect Street; and (5) did not stop his bicycle and move off the street to allow the oncoming cars to pass him.

*Id*. at 13. The City also argued that Komyatti's violation of Indiana traffic statutes was contributorily negligent per se.

In support of its motion, the City designated various evidence, including a report from John E. Pless, M.D., "a board certified Anatomic, Clinical and Forensic pathologist with 38 years [of] experience in the diagnosis of disease and injury." *Id*. at 234. Dr. Pless had reviewed "police reports, emergency reports, medical records, and [Komyatti's deposition]

7

concerning the circumstances surrounding" his fall. *Id*. Dr. Pless's report reads in pertinent part as follows:

> [Komyatti's] blood alcohol concentration on admission to Wishard Hospital was 137 mg/dL. This is 57 mg/dL over the amount considered operating a vehicle while intoxicated. To achieve this level during a three-hour period of imbibing adjusting for an increased weight of 230 pounds he would have had to have ingested at least 6 (+ or − 2) twelve-ounce beers before getting on his bicycle. This amount would clearly affect the ability of the average person. Some people are unconscious at that level while others with a history of heavy drinking might not show any effects. A person operating a bicycle requires more coordination of hand and eye than a person operating a motor vehicle. The water covering the hole might change whether he could have anticipated the hole in the street. However, there is no mention of water in the road in any of the police investigative reports and a witness claims that there was no water in the hole.

> In summary, Mr. Komyatti was definitely under the influence of alcohol at the time of his accident. It is more likely than not that this affected his ability to perceive the danger of this accident. Furthermore, the alcohol would have clearly slowed his response to danger limiting hand and eye coordination and thus inhibiting his ability to do a defensive maneuver.

*Id*. at 235.

In response to the City's summary judgment motion, Komyatti asserted that the City breached its duty to maintain Prospect Street in a reasonably safe condition by failing to fix potholes promptly and by "partially pav[ing] over the storm drain underneath the Prospect Street railroad bridge, causing water to pool under the bridge and create potholes such as the one [he] hit while riding his bicycle." *Id*. at 236. He further asserted that the City was "not entitled to summary judgment on its affirmative defense of contributory negligence" because

> [t]here are facts in dispute about how much alcohol [he] consumed, and what effect, if any, it had on him. Witnesses state that the alcohol did not appear to have any effect on [him], and the City's sole witness on this issue, its expert Dr. Pless, admits this may be true.

8

*Id*. at 237. In support of his response, Komyatti designated the deposition of Dr. Pless, who admitted that he did not "know the effect that the alcohol consumption actually had on Mr. Komyatti" and had "no way of knowing [his] actual degree of impairment." *Id*. at 262-63. Komyatti also argued that he was not contributorily negligent per se because the relevant traffic statutes were not intended to protect against the risk of the type of harm that occurred as a result of their violation.

In a memorandum supporting its summary judgment motion, Citizens argued that it was entitled to summary judgment because it did not have a duty to inspect or maintain Prospect Street; did not breach its duty to persons traveling along Prospect Street to refrain from creating or maintaining an unnecessarily dangerous condition on its property; and did not proximately cause Komyatti's injuries. In his response to Citizens' motion, Komyatti argued that Citizens had a legal duty not to allow coke to escape its property; that coke pieces clogged street drains, which led to water pooling and pothole formation; and that vehicles ran over coke pieces, which deteriorated the pavement and led to pothole formation.

The trial court did not hold a hearing on the summary judgment motions. On August 23, 2012, the court signed proposed orders submitted by the City and Citizens summarily

9

granting their respective motions.[8] Komyatti now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Our standard of review in summary judgment cases is well settled.

> When reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. Specifically, we must determine whether there is a genuine issue of material fact requiring a trial and whether the moving party is entitled to judgment as a matter of law. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. A party seeking summary judgment must make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue.

*Hassan v. Begley*, 836 N.E.2d 303, 306-07 (Ind. Ct. App. 2005) (citations omitted). "In determining whether genuine issues of material fact exist, the court must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party." *Id*. at 306.

---

[8] The order granting Citizens' motion reads, "The Court, having fully considered Citizens Energy Group's Motion for Summary Judgment, *and having heard oral argument from the parties*, rules as follows: Court hereby GRANTS Defendant Citizens Energy Group's Motion for Summary Judgment as to all claims plead by Plaintiff Paul Komyatti, Jr." Appellant's App. at 11 (emphasis added). Komyatti criticizes the trial court for adopting Citizens' proposed order in light of the obvious inaccuracy. Although we do not condone the trial court's lack of attention to this particular detail, we reject Komyatti's unsupported assertion that the trial court did not otherwise give its ruling "due consideration." Appellant's Br. at 8 n.1. To the extent Komyatti suggests that the trial court should have drafted its own detailed factual findings, we note that "[f]indings of fact are unnecessary on decisions of" summary judgment motions. Ind. Trial Rule 52(A).

A trial court's summary judgment order is cloaked with a presumption of validity; the party appealing from a grant of summary judgment bears the burden of persuading us that the decision was erroneous. *Breining v. Harkness*, 872 N.E.2d 155, 158 (Ind. Ct. App. 2007), *trans. denied* (2008). "We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record." *Id.*

### I. Summary Judgment for the City

Komyatti's complaint sounds in negligence. "To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). "To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense." *Precedent Partners I, L.P. v. Hulen*, 863 N.E.2d 328, 331 (Ind. Ct. App. 2007).

In most negligence actions in Indiana, "a plaintiff's contributory fault does not bar recovery unless it exceeds fifty percent of the total fault proximately contributing to the damages and otherwise operates only to reduce a plaintiff's damages in proportion to fault." *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 598 (Ind. 2006) (citing Ind. Code §§ 34-51-2-5, 34-51-2-6). Because the Indiana Comparative Fault Act does not apply to governmental entities, however, the common law defense of contributory negligence remains applicable to governmental entities such as the City in this case. *Id.* (citing Ind. Code § 34-

51-2-2). Therefore, even a slight degree of negligence on Komyatti's part, if it proximately contributed to his claimed damages, will operate as a total bar to his action against the City, regardless of any negligence on its part. *Id*.; *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 516 (Ind. Ct. App. 2000).[9]

> In *Funston*, our supreme court described contributory negligence as follows:

> > A plaintiff is contributorily negligent when the plaintiff's conduct falls below the standard to which he should conform for his own protection and safety. Lack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which the presence or absence of negligence depends. Expressed another way, contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise.

849 N.E.2d at 598-99 (alteration, citations, and quotation marks omitted). It must be shown that a plaintiff

> was actually aware of or should have appreciated the risks involved. Indiana courts have found contributory negligence as a matter of law in cases in which the voluntary conduct of the plaintiff exposed him to imminent and obvious dangers which a reasonable [person] exercising due care for his own safety would have avoided.

*Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984).

"An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable

---

[9] Neither the City nor Komyatti moved for summary judgment as to the City's alleged negligence, yet Komyatti devotes almost a quarter of his brief to that issue to "help[] explain Citizens Energy's negligence, the City's ultimate liability, and issues raised by the City's contributory negligence defense." Appellant's Br. at 9. Also, Komyatti spends several pages arguing that the City "repeatedly utilized an incorrect legal standard" regarding contributory negligence in its summary judgment submissions and thus misled the trial court as to the applicable law. Appellant's Br. at 27. This accusation is unfounded, as the City points out in pages 9 through 12 of its brief.

12

consequence of the act or omission." *Funston*, 849 N.E.2d at 600. "There can be multiple proximate causes of a resulting event. The defense of proximate cause requires only that a plaintiff's negligence be 'a' proximate cause, that is, one of the proximate causes." *Id.*

Contributory negligence is an affirmative defense, and thus the burden of proving it fell on the City. *St. John Town Bd.*, 725 N.E.2d at 516. "Contributory negligence is generally a question of fact and is not an appropriate matter for summary judgment if there are conflicting factual inferences. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law." *Funston*, 849 N.E.2d at 599 (citations and quotation marks omitted).

Komyatti contends that several disputed facts should preclude summary judgment on the City's contributory negligence defense, such as the amount of alcohol that he consumed, the effect that the alcohol had on him, whether his alcohol consumption proximately caused his injuries, and whether water obstructed his view of the pothole. In response, the City argues that "[t]he facts raised by Komyatti, while they may be disputed, are not material." City's Br. at 17. The City asserts,

> The undisputed fact remains that Komyatti was under the influence of alcohol at the time of his accident—regardless of how much alcohol he consumed and the extent the alcohol affected him. Moreover, the fact that Komyatti's BAC was above the legal limit is only one of the many facts in this case that establish Komyatti was contributorily negligent as a matter of law, and that his actions were "a" proximate cause of his injuries.
>
> There are no genuine issues of material fact. Komyatti did not designate any evidence to dispute the City's evidence as it relates to the facts leading up to and immediately before the accident. Komyatti's conduct was more than "slightly" negligent and was a proximate cause in bringing about his injuries. Komyatti was actually aware of and appreciated the risks of riding his

13

bicycle in that area; yet, chose to do so with a BAC of 0.137, into oncoming traffic, traveling "pretty fast," not yielding to two vehicles approaching him head-on, and with no helmet on. Summary judgment was proper in this case.

*Id*. at 17-18.

We agree with the City. Komyatti was familiar with the stretch of Prospect Street where the accident occurred, having traveled it only three hours before the accident and at least nine other times during the previous thirty days. He had seen potholes in the street each time. By his own admission, Komyatti drank two twelve- or sixteen-ounce beers at the bar and rode his bike on the wrong side of the street without a helmet and with a BAC over one and a half times the legal limit. He was traveling at least twenty miles an hour on a downhill slope as he approached the railroad overpass and saw two vehicles coming toward him in his lane. Instead of stopping and letting the vehicles pass or moving into the proper lane, Komyatti decided to veer left as far as he could and ride through a puddle beneath the overpass. He obviously had no idea how deep the puddle was or whether it concealed a pothole like the others he had seen on Prospect Street, but he rode into it anyway, with disastrous results.

Based on the totality of the foregoing facts, which are either undisputed or construed in Komyatti's favor, we conclude as a matter of law that Komyatti failed to exercise "for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise," *Funston*, 849 N.E.2d at 599, and that this failure to exercise reasonable care was a proximate cause of his claimed damages. The amount of alcohol that Komyatti consumed, his level of impairment, and the degree to which his

14

impairment might have contributed to his accident are disputed, but those disputes are simply not material under these circumstances. Therefore, regardless of any possible negligence on its part, the City is entitled to summary judgment on the basis of Komyatti's contributory negligence, and we affirm the trial court's ruling in its favor. Consequently, we need not consider whether Komyatti's violation of traffic statutes was contributorily negligent per se.

## II. *Summary Judgment for Citizens*

Komyatti asserts, "Evidence links Citizens Energy to the creation of the potholes on the south lane of Prospect Street underneath the railroad bridge next to its property. Citizens has negligently permitted coke to routinely escape its property, which clogs storm drains and erodes the pavement, both processes leading to potholes." Appellant's Br. at 18. For its part, Citizens does not dispute that "[o]ccasionally, coke product may be present on Prospect Street" and after a heavy rain may "become trapped in storm drains located in the curb and the trench drain located underneath the railroad overpass where Komyatti struck the pothole" or "be run over by cars and trucks traveling the road." Citizens' Br. at 4-5. The parties disagree, however, as to the existence and scope of any duty that Citizens may have owed to Komyatti, whether Citizens breached such duty, and whether such breach proximately caused Komyatti's injuries.[10]

---

[10] In a footnote, Komyatti contends that "[i]n addition to its negligence in permitting coke to escape its Staging Area, Citizens may also be liable to [him] on a public or private nuisance theory. This theory was raised in Mr. Komyatti's response to Citizen's summary judgment motion, but was never replied to by Citizens." Appellant's Br. at 19 n.3 (citations omitted). Komyatti fails to develop a cogent argument, and therefore his contention is waived. *Zoller v. Zoller*, 858 N.E.2d 124, 127 (Ind. Ct. App. 2006). Waiver notwithstanding, we agree with Citizens that "[n]either theory is applicable here" because Komyatti has not alleged that Citizens interfered with the use and enjoyment of his property. Citizens' Br. at 17 n.7 (citing *Holland v. Steele*, 961 N.E.2d 516, 524 (Ind. Ct. App. 2012), *trans. denied*).

"The existence of a duty is to be determined as a matter of law." *Neal v. Cure*, 937 N.E.2d 1227, 1236 (Ind. Ct. App. 2010), *trans. denied* (2011). "Although breach of duty is generally a question of fact, it can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *Raytheon Eng'rs & Constructors, Inc. v. Sargent Elec. Co.*, 932 N.E.2d 691, 695 (Ind. Ct. App. 2010) (citation and quotation marks omitted). It is undisputed that the City, and not Citizens, had a duty to maintain Prospect Street. *See Carroll v. Jobe*, 638 N.E.2d 467, 469 (Ind. Ct. App. 1994) ("A municipality has a common law duty to exercise reasonable care and diligence to keep its streets and sidewalks in a reasonably safe condition for travel.… However, there is no similar corresponding duty for owners of property abutting a public sidewalk."), *trans. denied* (1995); *see also Sizemore v. Templeton Oil Co.*, 724 N.E.2d 647, 654 (Ind. Ct. App. 2000) (holding that gas station owner owed no duty to pedestrian who injured ankle in pothole in state highway right-of-way adjacent to gas station entrance; "[P]ublic policy considerations weigh against the extension of the duty to provide safe ingress and egress outside of the business owner's premises. It is unclear how a business owner would discharge such a duty. Surely they would not be required to repair conditions such as potholes, particularly on state roads.").

At oral argument, Citizens suggested, and we agree, that the scope of its duty as a landowner to a member of the public traveling on an adjacent street is concisely and correctly summarized in Judge Hoffman's dissent in *Holiday Rambler Corp. v. Gessinger*, 541 N.E.2d 559 (Ind. Ct. App. 1989), *trans. denied*, which reads in pertinent part as follows:

The duty of a landowner to exercise ordinary care in the management of its property usually does not extend to persons outside the land, on adjacent property or on a sidewalk or highway. *Nava v. McMillan* (1981), 123 Cal. App. 3d 262, 266, 176 Cal. Rptr. 473, 476, *cited with approval in State v. Flanigan* (1986), Ind. App., 489 N.E.2d 1216. An exception to the general rule exists where the physical harm caused to the persons outside the land is a result of dangerous activities conducted on the land. *Id.*

To remove a case from the general rule proscribing off-premises liability, two conditions must be satisfied. First, there must be a relationship between the landowner and the agency causing the problem on the adjacent property. *Blake v. Dunn Farms, Inc.* (1980), Ind., 413 N.E.2d 560, 564. Secondly, it must be shown that the landowner maintained a hazardous condition or conducted some activity on its property, beyond the mere fact of operating a business, which caused the injury on the adjacent property. *Snyder Elevators, Inc. v. Baker* (1988), Ind. App., 529 N.E.2d 855, 858.

*Id.* at 565 (Hoffman, J., dissenting).

Komyatti argues that there is a relationship between Citizens and the "agency causing the problem" on Prospect Street, but that relationship is attenuated and speculative at best. Komyatti was not injured as a result of riding over a piece of coke that escaped from Citizens' property, but rather as a result of riding into a pothole that he claims was possibly caused by coke-damaged pavement and/or coke-clogged storm drains in conjunction with the freeze/thaw cycle.[11] At any rate, it is undisputed that Citizens did not maintain a hazardous condition or conduct some activity on its property beyond the mere fact of operating its

---

[11] We note that Komyatti designated no competent evidence establishing that the pavement beneath the overpass was actually damaged by vehicles running over pieces of coke or that the pothole was actually caused by coke-clogged storm drains. We also note that Komyatti designated evidence indicating that the pothole may have been caused by the City's paving over of a trench drain beneath the railroad overpass, which resulted in water pooling in that area.

business that caused Komyatti's injuries on Prospect Street.[12]  Therefore, we conclude as a matter of law that Citizens did not breach its duty to Komyatti and affirm the trial court's grant of summary judgment on this basis.  As such, we need not address the issue of proximate cause.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[12] Consequently, we are unpersuaded by Komyatti's reliance on *Pitcairn v. Whiteside*, 109 Ind. App. 693, 34 N.E.2d 943 (1941), in which the plaintiff motorist was rear-ended by another motorist as he drove through a thick cloud of smoke emanating from a fire started by railroad workers on the defendant railroad's adjoining right-of-way.  As Judge Hoffman stated in *Holiday Rambler*,

> Because the railroad itself caused the problem on the abutting highway, a clear relationship was established.  Moreover the railroad, by burning off the right-of-way, had engaged in a hazardous activity beyond the mere operation of its business.  The Supreme Court [sic] therefore found a duty on the part of the railroad to exercise reasonable care to prevent injury to travelers upon the highway.

541 N.E.2d at 565 (Hoffman, J., dissenting).